UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of Linda Miller, et al., | No. 2:20-cv-00577-KJM-DMC |
| Plaintiffs, | ORDER |
| v. | |
| County of Sutter, et al., | |
| Defendants. | |

This is a survival action on behalf of Linda Miller, who died awaiting trial in the Sutter County Jail. She was also briefly incarcerated in the Nevada County Jail, and Nevada County and its officers and employees are among the defendants. They move to dismiss many of the claims against them. The motion is **granted in part and denied in part**.

**I.      BACKGROUND AND LEGAL STANDARD**

The case is proceeding on the plaintiffs' second amended complaint, which they filed after this court dismissed the amended complaint with leave to amend in part. *See generally* Prev. Order, ECF No. 67; Second Am. Compl. (SAC), ECF No. 68. The allegations in the second amended complaint parallel those of its predecessor and need not be described again in detail. *See* Prev. Order at 2–6. In short, the plaintiffs allege Miller was transferred to the Nevada County Jail as a courtesy after Sutter County found that it "would have a hard time" accommodating her medical needs in its own jail. SAC ¶ 92. Soon after the transfer, Miller suffered a "painful and

protracted opioid[-]related medical crisis" that appeared to be the result of either a suicide attempt, intense opioid withdrawal symptoms, or both. *See id.* ¶¶ 99, 104. "Hours passed" after she first called for help before she was treated; staff watched her condition "dramatically worsen" until she became "unresponsive." *Id.* ¶ 99. She was taken to a hospital in the morning, then transferred back to the Sutter County Jail. *See id.* ¶¶ 100–01. But staff members and officers at the Nevada County Jail withheld "crucial information" about Miller's mental health and her crisis from Sutter County. *Id.* ¶ 101. She was found dead in her cell in the Sutter County Jail a few days later. *See id.* ¶ 119. She had asphyxiated in an apparent suicide. *See id.*

The plaintiffs include members of Miller's family and a representative of her estate. They assert claims against Nevada and Sutter counties, against officers and staff who worked in the Nevada and Sutter county jails, and against several defendants affiliated with a private contractor that managed the medical and mental health care in both counties' jails, including several unidentified Doe defendants.[1] *See id.* ¶¶ 26–28 (describing parties' identities in detail). The defendants affiliated with Nevada County now move to dismiss several of the claims against them. *See* Mot. Dismiss, ECF No. 77; Mem., ECF No. 77-1. The Sutter County defendants and the contractor defendants have not moved to dismiss. The remainder of this order accordingly refers only to allegations and claims against the Nevada County defendants: the County itself, Sheriff Shannon Moon, Officer Jeanette Mullenax, and ten unnamed Doe defendants. The plaintiffs oppose the motion in part, ECF No. 80, the defendants replied, ECF No. 81, and the court submitted the matter without a hearing, ECF No. 83.

The court summarized the applicable legal standard in its previous order:

> A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114,

---

[1] If defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

> 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them. [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]. If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Id.* at 679.
>
> A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

Prev. Order at 7.

## II. ANALYSIS

### A. Deliberate Indifference to Serious Medical Needs (Claim 1)

The plaintiffs first assert a claim of deliberate indifference to Miller's serious medical needs in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, against the Sheriff, Mullenax, and the Doe defendants. *See* SAC ¶¶ 162–69. As before, their allegations state a claim against Mullenax based on her alleged deliberate indifference while returning Miller to Sutter County's custody. *See* Prev. Order at 21–23. But the allegations do not permit the court to infer the Sheriff's liability under the legal standard described above. Nor do the plaintiffs oppose the motion to dismiss their first claim against the Sheriff. "Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument." *Resnick v. Hyundai Motor Am., Inc.*, No. 16-00593, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017). The first claim against the Sheriff is dismissed.

The plaintiffs do not oppose the motion to dismiss this first claim against the Doe defendants either. Plaintiffs do argue, however, that the Doe defendants acted with deliberate indifference in their opposition to the dismissal of a different claim. *See* Opp'n at 15. The court has therefore reviewed the second amended complaint independently to determine whether its allegations support a claim of deliberate indifference by the unknown Nevada County officers responsible for Miller's care. As summarized in the court's previous order, in this context, a claim of deliberate indifference has four elements:

3

1. The defendant made an intentional decision about the plaintiff's medical care. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

2. That decision "put the plaintiff at substantial risk of suffering serious harm." *Id.*

3. "[T]he defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Id.* "[T]he defendant's conduct must be objectively unreasonable." *Id.* (quoting *Castro v. City of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

4. "[B]y not taking such measures, the defendant caused the plaintiff's injuries," *id.*, both actual cause and proximate cause, *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).

Prev. Order at 20.

The plaintiffs allege Sutter County transferred Miller to Nevada County Jail because Sutter County feared it could not give her the treatment she needed. *See* SAC ¶ 92. When Miller arrived, Nevada County staff learned she suffered from seizures and chronic pain, was taking medication for both conditions and was misusing opioids. *See id.* ¶¶ 93–96. She was nevertheless assigned to a cell in the general population. *See id.* That night, staff waited for several hours while Miller suffered in pain, called for help, and became unresponsive before they called paramedics and sent her to the hospital. *See id.* ¶¶ 99–100. These allegations satisfy the elements of a claim for deliberate indifference: (1) staff decided not to intervene despite Miller's calls for help; (2) their inaction put Miller at a substantial risk of serious harm from opioid overdose or withdrawal; (3) jail staff knew Miller was in pain, had been misusing opioids, and was suffering from seizures; and (4) because staff did not intervene, Miller suffered needlessly, became unresponsive, and was hospitalized.

The court therefore grants the motion to dismiss the first claim with respect to the claims against the Sheriff and denies it for the claims against Mullenax and the Doe defendants.

**B.   Failure to Protect from Harm (Claim 2)**

The second claim is for failure to prevent harm to Miller in violation of the Fourteenth Amendment and § 1983, against the Sheriff, Mullenax, and the Doe defendants. SAC ¶¶ 170–74.

1  This claim rests on the same allegations and legal theory as the first. The court thus grants in part
2  and denies in part the motion to dismiss this claim to the same extent. *See* Prev. Order at 23–24.
3  The court declines to dismiss the second claim outright as "duplicative" of the first, as the
4  County urges. *See* Mem. at 6–7; Reply at 2. The County cites no authority to support that
5  request, and the federal rules allow plaintiffs to rely on alternative allegations and theories of
6  liability. *See* Fed. R. Civ. P. 8(d)(2)–(3).

### C. Municipal Liability (Claim 3)

Third, the plaintiffs assert a claim for violations of the Fourteenth Amendment against the County under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See* SAC ¶¶ 178–83. According to the operative complaint, plaintiffs also assert this claim against the Doe defendants, but they allege these defendants are natural persons. *See id.* ¶ 65. A natural person cannot be liable as a municipality; those terms are mutually exclusive. *Cf. Monell*, 436 U.S. at 683 (so using the terms "legal person" and "natural person"). The court dismisses the *Monell* claim against the Doe defendants.

Moving, then, to the claims against the County, the plaintiffs must ultimately prove "(1) that [Miller] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to [Miller's] constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). A complaint's allegations of municipal liability must "not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). A plaintiff's allegations must also "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

/////

5

Here, the plaintiffs rely on three theories to allege the County maintained an unconstitutional policy. First, they allege the County maintained unconstitutional official policies or customs for drug overdoses and withdrawal, mental health, and emergency medical care in the jail. *See* Opp'n at 5–9; SAC ¶¶ 105–09. An official municipal policy may be made up of "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). "[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (citations and quotation marks omitted). And a county's "inaction—specifically, failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Id.* at 1234 n.8.

The plaintiffs attempt to rely on such allegations of widespread practices and inaction. Their pleading identifies three prior complaints of similar wrongdoing that, they allege, should have put the County on notice that its policies were deliberately indifferent to inmates suffering from drug overdoses, withdrawal, or poor mental health and that it was not providing emergency medical care:

- In 2016, a man died of a heroin overdose in the Nevada County Jail after staff allegedly failed to provide medical assistance. SAC ¶ 139.
- In 2018, officers pushed a man's head into a wall and broke his leg, and he was kept in a cell in the Nevada County Jail overnight, allegedly without treatment. *Id.* ¶ 140.
- In 2018, a woman nearly died after she suffered a pulmonary edema and congestive heart failure because officers at the Nevada County Jail did not quickly and effectively obtain care for her. *Id.* ¶ 141.

These allegations do not permit the court to infer that the County has chosen inaction in the face of "widespread constitutional violations" related to drug overdoses, withdrawal, and mental health in the jail. Only the first of the three cases includes allegations of a drug overdose, and

"one instance of County employees violating the constitutional rights . . . is insufficient to demonstrate a custom supporting *Monell* liability." *Benavidez v. Cty. of San Diego*, 993 F. 3d 1134, 1154 (9th Cir. 2021).

But the plaintiffs challenge more than just drug and mental health policies. They also allege the County's policies "on the provision of emergency medical care to [its] prisoners with a serious and/or life-threatening medical condition" fall short of constitutional standards. SAC ¶ 107. The three cases cited in the second amended complaint include similar allegations of emergency medical care withheld from inmates in urgent need in the Nevada County Jail. Courts have denied motions to dismiss when plaintiffs have alleged a similar series of constitutional violations. *See, e.g.*, *Est. of Alejandro Sanchez v. Cty. of Stanislaus*, No. 18-00977, 2019 WL 1745868, at *4 (E.D. Cal. Apr. 18, 2019) (collecting authority and finding that three previous cases of similar excessive force sufficed to show the plaintiff had stated a *Monell* claim). These allegations "give fair notice," enable Nevada County to defend itself effectively," and "plausibly suggest" the plaintiffs could prove the County has maintained a policy of inaction in the face of urgent medical needs in the jail. *Hernandez*, 666 F.3d at 637 (quoting *Starr*, 652 F.3d at 1216). "[I]t is not unfair to require the [County] to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

The County argues the three previous complaints of allegedly unconstitutional treatment are not similar to Miller's allegations. *See* Mem. at 8–9; Reply at 3. But aside from pointing out that only one complaint involved opioids, the County does not confront the complaints' substance; it merely labels them "sporadic and dissimilar." Mem. at 8. According to the plaintiffs' allegations, however—which at this point the court must assume are true—these previous cases bear a clear resemblance to this one. In each previous case, the County left an inmate in need alone and untreated despite pleas for help or obvious signs of urgent distress. *See, e.g.*, SAC ¶ 139 ("The authorities failed to provide medical assistance once [the first inmate] was found face down in apparent distress."); *id.* ¶ 140 ("Despite repeatedly asking for medical attention, [the second inmate] was placed in a cell, left overnight in unrelenting pain."); *id.* ¶ 141

/////

1  ("[D]eputies and staff were indifferent and dismissive to [the third inmate's] cries for medical
2  attention, failing to call an ambulance for hours and causing her condition to exacerbate . . . .").
3        This conclusion is strengthened by the plaintiffs' allegations in support of their second
4  theory of the County's municipal liability. They allege the County is liable for the inadequate
5  policies of the contractors it hired to provide medical care to the people in the jail. *See* Opp'n at
6  9–10; *see also, e.g.*, SAC ¶ 142. As explained in the court's previous order, the plaintiffs have
7  offered factual allegations about these private contractors to support their claim that the
8  contractors "maintained a policy of inaction that amounted to deliberate indifference." Prev.
9  Order at 25. And because municipal governments have a "non-delegable duty to provide
10  adequate medical treatment to prisoners in [their] custody," they cannot "absolve" themselves of
11  that duty "merely by contracting out these services." *Lemmons v. Cty. of Sonoma*, No. 16-04553,
12  2018 WL 452108, at *3 (N.D. Cal. Jan. 17, 2018); *see also Est. of Lovern by & through Dailey v.*
13  *Correct Care Sols., LLC*, No. 18-02573, 2019 WL 2903589, at *7 (D. Colo. July 3, 2019)
14  (collecting cases to support this rule). To the extent the County has given "control and final
15  decision making" power to its contractors, those contractors' policies "effectively become the
16  policies of [the] County." *Lemmons*, 2018 WL 452108, at *3. If those policies were
17  unconstitutional, the County would be liable.
18        The County does not dispute this conclusion. It contends only that its contractors did not
19  enforce these unconstitutional policies in the County's own jail; its contractors, the County
20  argues, are alleged to have adopted unconstitutional polices only in other jails. *See* Reply at 4.
21  While that argument bears a certain legalistic logic, it inspires no confidence in the County's own
22  policies. In any event, as explained above, the second amended complaint's allegations permit
23  the court to infer the plaintiffs could prove that inmates in the Nevada County Jail have been left
24  untreated despite their pleas for help or obvious and urgent needs.
25        Finally, the plaintiffs allege the County's training policies did not prepare its employees to
26  respond to medical emergencies, drug overdoses, drug withdrawals, and mental health problems.
27  *See, e.g.*, SAC ¶¶ 107, 182; *see also* Opp'n at 10–11. A municipality's failure to train employees
28  may rise to the level of an official policy under *Monell*, but the omission must amount to

1  "deliberate indifference to the rights of persons with whom the [untrained employees] come into
2  contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388
3  (1989)) (quotation marks omitted). Deliberate indifference is a stringent standard. *See Bd. of*
4  *Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). The need for training
5  must be "so obvious, and the inadequacy so likely to result in the violation of constitutional
6  rights, that the policymakers of the city can reasonably be said to have been deliberately
7  indifferent to the need." *Canton*, 489 U.S. at 390. A pattern of similar constitutional violations is
8  usually necessary to demonstrate deliberate indifference. *Connick*, 563 U.S. at 62 (citing *Bryan*
9  *Cty.*, 520 U.S. at 409). Without a pattern of similar violations, policymakers cannot usually be
10 said to have "deliberately chosen a training program that will cause violations of constitutional
11 rights." *Id.*

12 Here, the three similar violations discussed above support the plaintiffs' failure-to-train
13 theory of the County's liability. *See, e.g.*, *McCoy v. City of Vallejo*, No. 19-001191, 2020 WL
14 374356, at *3 (E.D. Cal. Jan. 23, 2020). The plaintiffs may also rely here on their allegation that
15 the County renewed its contract with third-party medical providers despite widespread reports of
16 those contractors' inadequate training. *See* SAC ¶¶ 142, 144; *see also* Prev. Order at 25. *Cf.,*
17 *e.g.*, *Coe v. Schaeffer*, No. 13-00432, 2014 WL 1513305, at *4 (E.D. Cal. Apr. 11, 2014) (finding
18 reports of officer's malfeasance put county on notice of officer's poor training and sufficed to
19 state claim based on that officer's conduct).

20 The court denies the motion to dismiss claim three to the extent that claim is based on the
21 County's alleged policy of indifference to jail inmates in need of emergency medical care, its
22 retention of contractors with allegedly deficient policies, and its alleged failure to train employees
23 to provide care for inmates with medical emergencies, drug overdoses, drug withdrawals, and
24 mental health problems comparable to those Miller allegedly suffered.

25 **D.     Supervisory Liability (Claim 4)**

26 In their fourth claim, the plaintiffs allege the Sheriff and Doe defendants are liable as
27 supervisors under § 1983. SAC ¶¶ 184–92. The court dismissed this claim in its previous order
28 because the plaintiffs had not alleged that the Sheriff "made any decisions about Miller's care."

Prev. Order at 26. The second amended complaint does not add factual allegations to fill this gap. Its allegations against the Sheriff remain generic. *See, e.g.*, SAC ¶ 102 (alleging Sheriff and several other defendants "knew or should have known that [Miller] was likely to experience onset of or exacerbation of irritability and aggression, cognitive impairments and hallucinations, depression, suicidal thoughts, and mood swings" but "failed to take the necessary steps to assess . . . [her] mental health condition and to administer appropriate care").

The plaintiffs argue in opposition that the Sheriff can be personally liable because she approved the County's contracts with its private contractors, citing a decision from another California federal district court. *See* Opp'n at 12 (citing *George v. Sonoma Cty. Sheriff's Dep't*, No. 08-02675, 2010 WL 4117381 (N.D. Cal. Oct. 19, 2010)). In *George*, the court denied summary judgment to the defendant sheriff because the sheriff had made no changes to jail policies or contracts despite a grand jury finding that "more frequent and thorough bed checks" were needed. *See id.* at *23–24. That court distinguished another case, *Estate of Abdollahi v. County of Sacramento*, 405 F. Supp. 2d 1194 (E.D. Cal. 2005), which is more similar to this case. In *Abdollahi*, another judge of this District granted summary judgment to a sheriff because no evidence showed he was the "direct supervisor of the allegedly offending officers," among other reasons. *See id.* at 1210–11. Similarly here, the plaintiffs do not allege the Nevada County Sheriff was directly responsible for the officers who were charged with Miller's care, that she knew about Miller, or that she made any decisions about the County's policies or contracts. Nor do they make these claims about any of the Doe defendants. The court dismisses the fourth claim.

E.     **Loss of the Parent-Child Relationship (Claim 5)**

In their fifth claim, the plaintiffs allege the Sheriff, Mullenax, and the Doe defendants deprived them of substantive due process. SAC ¶¶ 193–96. The court permitted this claim to proceed against Mullenax in its previous order, but dismissed the same claim against the other defendants. *See* Prev. Order at 26–27. The County moves again to dismiss the claim against the defendants other than Mullenax, and the plaintiffs do not oppose. The court thus dismisses claim five to the same extent as in its previous order.

### F. Failure to Furnish or Summon Medical Care (Claim 6)

The plaintiffs' sixth claim is for failure to furnish or summon medical care in violation of California Government Code section 845.6. SAC ¶¶ 197–203. Plaintiffs name Nevada County, Mullenax, and the Doe defendants. *See id.* at 49. The court permitted this claim to move forward against Nevada County in its previous order. Prev. Order at 27–28. In response to the County's current motion, the plaintiffs expressly abandon the claim to the extent it was asserted against Mullenax, *see* Opp'n at 1–2. The court therefore dismisses the sixth claim against Mullenax.

### G. Wrongful Death (Claim 8)

The plaintiffs assert their eighth claim, a claim for wrongful death under California law, against Nevada County, the Sheriff, Mullenax, and the Doe defendants. SAC ¶¶ 209–20. The court permitted this claim to proceed against Mullenax in its previous order, but not against the Sheriff or the County. Prev. Order at 29–30. The County now moves to dismiss the wrongful death claim in the second amended complaint to the same extent. The plaintiffs do not oppose that motion as to the Sheriff. They do argue their wrongful death claim may proceed against the County itself.

To state a claim for wrongful death, a plaintiff must allege facts showing the defendant's wrongful act or neglect caused the death. Prev. Order at 29 (citing Cal. Civ. Proc. Code § 377.60 and *Norgart v. Upjohn*, 21 Cal. 4th 383, 390 (1999)). Here it is implausible to infer that the County's failure to treat Miller in its own jail caused her death several days later in the Sutter County jail. *Tate v. Canonica*, which the plaintiffs cite in their opposition, does not counsel otherwise. *See* Opp'n at 13–14 (citing 180 Cal. App. 2d 898 (1960)). In *Tate*, the California Court of Appeal held that "if [a] negligent wrong causes mental illness which results in an uncontrollable impulse to commit suicide, then the wrongdoer may be held liable for the death." 180 Cal. App. 2d at 915. The plaintiffs do not allege the County caused Miller to suffer from an uncontrollable impulse to commit suicide. The court dismisses the eighth claim.

/////

### H. Bane Act (Claim 10)

The plaintiffs assert their tenth claim under the Bane Act against Nevada County, the Sheriff, Mullenax, and the Doe defendants. SAC ¶¶ 230–37. The court permitted plaintiffs to proceed with this claim against Mullenax in its previous order, but not the other defendants. Prev. Order at 31–32. The County moves to dismiss the claims in the second amended complaint to the same extent. The plaintiffs do not oppose the motion to dismiss the claims against the Sheriff or the direct claims against the County. They argue only against dismissal of their claim against the unnamed Does and the County as the Does' employer. *See* Opp'n at 16.

The court summarized the legal standard for Bane Act claims in its previous order:

> The Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230 (2007)). When a Bane Act claim is based on an alleged federal constitutional violation, as here, plaintiffs may rely on the same allegations to prove both that the defendant deprived them of a constitutional right and threatened, intimidated or coerced them under the Bane Act. *See id.* at 1043 ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."). But the claim must also rest on factual allegations that would allow an inference the defendant had a "specific intent" to violate the plaintiff's rights. *See id.* (quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017)). These rules are applicable to claims of deliberate indifference to serious medical needs. *See Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018).

Prev. Order at 31–32.

Here, as summarized above, the plaintiffs have stated a claim of deliberate indifference to Miller's serious medical needs in violation of her federal constitutional rights. "Because deliberate indifference claims have been 'associated with affirmatively culpable conduct,' a successful claim that 'prison officials acted or failed to act with deliberate indifference to [an inmate's] medical needs in violation of [her] constitutional rights . . . adequately states a claim for relief under the Bane Act." *Brown v. Cty. of Mariposa*, No. 18-01541, 2019 WL 1993990, at *12 (E.D. Cal. May 6, 2019) (quoting *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898–99 (N.D. Cal. 2013)).

12

The County argues its employees are immune from Bane Act liability under Government Code sections 845.6, 855.8, and 856. Mem. at 16. The court determined in its previous order that these immunities are not effective against the claims and allegations here. *See* Prev. Order at 27–28. The court declines to revisit those conclusions, and denies the motion to dismiss the Bane Act claims against the Doe defendants.

### I.     Americans with Disabilities Act and Rehabilitation Act (Claim 11)

In their final claim, the plaintiffs allege Nevada County and the Doe defendants violated the Americans with Disabilities Act and the Rehabilitation Act. SAC ¶¶ 238–47. As before, the court concludes this claim cannot proceed. The plaintiffs do not allege the County discriminated against Miller because of a disability or denied her an accommodation or benefit. According to the complaint, she was screened, interviewed, and evaluated, but received meager and delayed care. *See* SAC ¶¶ 93–100. The ADA and Rehabilitation Act do not prohibit "inadequate treatment for disability." Prev. Order at 33 (quoting *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060).

### J.     Leave to Amend

Federal Rule of Civil Procedure 15 adopts a liberal policy in favor of amendments. *See* Fed. R. Civ. P. 15(a)(2). Here, however, the court has considered the plaintiffs' similar or identical allegations twice, and the case is now proceeding on the third iteration of the plaintiffs' complaint. Plaintiffs have not requested leave to further amend. In these circumstances, dismissal without leave to amend is appropriate to move this case forward toward a resolution on its merits. *See, e.g.*, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" (quoting *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980))).

### III.    CONCLUSION

Nevada County's motion to dismiss is **granted in part and denied in part**, as explained in detail above. To the extent the motion is granted, it is granted **without leave to amend**. **A**

1   **scheduling conference is set for March 10, 2022, at 2:30 p.m. before the undersigned**, with
2   a joint report due **fourteen days before** the conference.
3       This order resolves ECF No. 77.
4       IT IS SO ORDERED.
5   DATED:  February 16, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE