Dan Stormer, Esq. [S.B. #101967]
Hanna Chandoo, Esq. [S.B. #306973]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com; hchandoo@hadsellstormer.com

Dan Siegel, SBN 56400
EmilyRose Johns, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com; emilyrose@siegelyee.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

Estate of LINDA MILLER, by and through
Minor H.S., by and through his Guardian *ad
Litem*, RICHARD HYDE, as Administrator;
CHRISTINA HYDE; and Minor Plaintiff H.S.,
by and through his Guardian *ad Litem*,
RICHARD HYDE,

Plaintiffs,

v.

COUNTY OF SUTTER; COUNTY OF
NEVADA, SHERIFF BRANDON BARNES, in
his individual capacity; SHERIFF SHANNON
MOON, in her individual capacity;
COMMANDER DAN BUTTLER, in his
individual capacity; LIEUTENANT NORMAN
BIDWELL, in his individual capacity;
SERGEANT KRISTIE M. GARZA, in her
individual capacity; BRENDA FRANKS, in her
individual capacity; MARETTE COOPER, in her
individual capacity; JEANETTE MULLENAX,
in her individual capacity; WELLPATH; H.I.G.
CAPITAL, LLC; CALIFORNIA FORENSIC
MEDICAL GROUP (AKA Correctional Medical
Group Companies, Inc. and AKA WELLPATH);
TAYLOR FIFTHIAN, in his official and
individual capacities; KIP HALLMAN, in his
official and individual capacities; ASHLEY
MOSELEY; and DOES 2-20,

Defendants.

Case No.: 20-cv-00577-KJM-DMC

[Assigned to the Honorable Kimberly J. Mueller –
Courtroom 3]

**THIRD AMENDED COMPLAINT FOR
DAMAGES; DEMAND FOR JURY TRIAL**

1. Failure to Provide Medical Care (Fourteenth
   Amendment)
2. Failure to Protect from Harm (Fourteenth
   Amendment)
3. Municipal Liability
4. Supervisory Liability
5. Deprivation of Substantive Due Process (First
   and Fourteenth Amendments)
6. Failure to Furnish Medical Care
7. Negligent Supervision, Training, Hiring, and
   Retention
8. Wrongful Death
9. Negligence
10. Violation of the Bane Act
11. Violation of the ADA and Rehabilitation Act

Complaint filed:      March 16, 2020
Trial Date:           None Set

THIRD AMENDED COMPLAINT
FOR DAMAGES

**INTRODUCTION**

1.      On April 20, 2019, 33-year-old LINDA MILLER committed suicide in Sutter County Jail, where she was detained awaiting trial, by hanging herself from a bed sheet in her cell. In the five days that she was incarcerated there and at the Wayne Brown Correctional Facility in Nevada County, she exhibited clear symptoms of mental illness, drug withdrawal, and suicidal ideation, all which went woefully ignored by the COUNTY OF NEVADA and COUNTY OF SUTTER jail employees. Defendants' deliberate indifference and negligence as described herein caused the needless suffering and death of LINDA MILLER, and the grief and loss her mother and son now endure.

2.      Several months earlier, in August 2018, LINDA MILLER was involved in a motor vehicle collision that resulted in the deaths of two people and left LINDA MILLER in a coma for days, broke both her legs, fractured her spine, necessitated surgery to remove part of her bowels, and so impaired her ability to walk that she needed a wheelchair. To manage the chronic pain, she was prescribed opioid painkillers, developed an addiction, and used heroin to self-medicate. In March 2019, LINDA MILLER underwent a dangerous and invasive surgery where two metal rods were removed from her legs due to an infection. On April 15, 2019, wheelchair-bound and still recovering from surgery, LINDA MILLER voluntarily appeared in court to address charges of vehicular manslaughter in connection with the August 2018 car accident. She was remanded to the Sutter County Sheriff's Department that same day. At all times relevant hereto, LINDA MILLER was a pretrial detainee.

3.      Defendant KRISTIE M. GARZA, Sutter County Jail Correctional Sergeant, declined to house LINDA MILLER at Sutter County Jail because the Jail was purportedly not medically equipped to handle a prisoner in a wheelchair. On April 15, 2019, LINDA MILLER was transferred to Wayne Brown Correctional Facility, where she reported her chronic opioid and heroin use and sought detox assistance. In less than one day, LINDA MILLER endured a painful and protracted opioid related medical crisis in an apparent suicide attempt. COUNTY OF NEVADA had in place substandard policies and practices for identifying and treating newly-booked prisoners who were at risk of drug and alcohol withdrawal. Notwithstanding the knowledge that LINDA MILLER presented with a condition that required immediate and closely monitored medical attention, LINDA MILLER was not immediately placed in a sobering cell, or provided required medical attention. Moreover, COUNTY OF NEVADA failed to

THIRD AMENDED COMPLAINT
FOR DAMAGES                                  -1-

conduct a mental health evaluation. COUNTY OF NEVADA further failed to timely summon medical care even though LINDA MILLER was in obvious excruciating pain.

4.     COUNTY OF NEVADA jail staff discharged LINDA MILLER to the custody of the Sutter County Sheriff's Department, which they knew, based on a communication with Sutter County Jail staff just one day earlier, could not adequately accommodate LINDA MILLER's multiple medical issues and use of disability appliances. LINDA MILLER was transported back to Sutter County Jail, where jail staff booked and placed her knowing that Sutter County Jail could not, and would not, provide anything resembling the level of evaluation, treatment and supervision that LINDA MILLER required given her gravely disabled physical health, mental health condition, and her opioid related medical crisis earlier that day. In the process of the transfer, Sutter County deputy ASHLEY MOSELEY received information that LINDA MILLER had attempted suicide less than 24 hours ago while in the custody of Nevada County. Neither MOSELEY nor the other Sutter County Defendants made attempts to place LINDA MILLER under heightened observation where she would have received more frequent safety checks and immediate medical and mental health care.

5.     For the next four days, LINDA MILLER remained at Sutter County Jail, where she received profoundly inadequate medical and mental health treatment. Despite knowledge that LINDA MILLER was actively experiencing opiate withdrawal and getting increasingly depressed and suicidal, medical staff placed LINDA MILLER in a general population single cell. Medical staff at COUNTY OF SUTTER Jail knew or should have known that LINDA MILLER was uniquely vulnerable to suicidal thoughts, which in itself warranted placement on suicide watch or in special housing. Just two days before LINDA MILLER took her own life, she had her first and only mental health evaluation with Defendant BRENDA FRANKS at Sutter County Jail. In that visit, LINDA MILLER's mental health deterioration was apparent. She expressed that she had a previous diagnosis of depression and bipolar; previously attempted suicide twice; had previously taken psychiatric medication Prozac, Lithium, Geodon, and Seroquel; was on suicide watch in previous incarcerations because she had stopped taking her psychotropic medications; had not slept since she got to jail and was starting to hallucinate; felt hopeless; experienced a reject rejection or loss in her court case; and felt presently guilty or worthless. FRANKS did not place LINDA MILLER on suicide watch or otherwise act on these clear signs of

THIRD AMENDED COMPLAINT
FOR DAMAGES
-2-

1   suicidal ideation.

2   6.      On April 19, 2019, the day before LINDA MILLER died by suicide, she was present at a

3   bail hearing where the judge increased her bail to $2 million, which her family could not afford, ensuring

4   that she would never leave the Sutter County Jail. LINDA MILLER was emotionally distraught and

5   feared that she had already been convicted. On the morning of April 20, 2019 at 9:11 AM (just six

6   minutes before LINDA MILLER was discovered hanging in her cell), MOSELEY signed the Sutter

7   County Jail Activity Log stating that she had completed a safety check when in fact she had not observed

8   LINDA MILLER. Despite clear and present signs of suicidal ideation, LINDA MILLER was never seen

9   by a psychiatrist, never received critical mental health care, and was left in a non-observation cell in

10  General Population with fixtures that are suicide hazards, where she eventually took her own life.

11  7.      The astonishing actions and failures described herein led to LINDA MILLER's further

12  decline in mental health, unnecessary suffering, and ultimately her preventable suicide at Sutter County

13  Jail on April 20, 2019. COUNTY OF SUTTER and Defendants failed to provide the care and treatment

14  LINDA MILLER urgently needed, in spite of readily apparent and known indicators of LINDA

15  MILLER'S deterioration, suicidal thoughts, and need for psychiatric care. Her tragic death was

16  preventable—and would not have happened—if Defendants in this case had fulfilled their duties as

17  public safety agencies and followed policies and procedures that are standard in their fields and required

18  by law.

19  8.      Defendants are California municipalities, Sheriffs' departments, health care providers, and

20  their employees. Each Defendant entity had multiple contacts with LINDA MILLER in the days before

21  her death. Had Defendants followed standard protocols and training, they would have identified Miller's

22  acute mental health crisis and risk factors, and intervened to protect her. However, Defendants did not

23  have the appropriate policies and procedures in place, and ignored the obvious warning signs.

24  9.      The Estate of LINDA MILLER and the surviving family of LINDA MILLER, her mother

25  CHRISTINA HYDE and her minor son H.S., bring this action for damages against Defendants for

26  violations arising out of Defendants' deliberate indifference to LINDA MILLER's serious medical needs

27  and their negligence that caused her needless suffering and death.

28  / / /

THIRD AMENDED COMPLAINT
FOR DAMAGES                          -3-

**JURISDICTION**

10.     This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments of the United States Constitution, of LINDA MILLER, pursuant to 42 U.S.C. §§ 1983 and 1988, and for violations of California state law.  This Complaint further seeks damages for the violation of the civil rights, privileges, and immunities, of CHRISTINA HYDE and H.S. as guaranteed by the First and Fourteenth Amendments of the United States Constitution, and under California state law.

11.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

12.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

**VENUE**

13.     Plaintiffs' claims arose in the Counties of Sutter and Nevada, California. Venue therefore lies in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2).

14.     Rule 3 of the Federal Rules of Civil Procedure and Local Rule 120(d) authorizes assignment to this division because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the counties served by this division.

**PARTIES**

15.     Plaintiffs' decedent is LINDA MILLER, who, at the time of her death, was a 33-year old citizen of the United States. She was a resident of the County of Butte in the State of California.

16.     Plaintiff Minor H.S., by and through his Guardian *ad Litem*, RICHARD HYDE, as Administrator of the Estate of LINDA MILLER, brings this action pursuant to California Code of Civil Procedure §§ 377.10 *et seq*. The survival causes of action in this matter are based on violations of LINDA MILLER's rights under the First and Fourteenth Amendments, and on violations of California state law as against COUNTY OF SUTTER, COUNTY OF NEVADA, all individual Defendants of Sutter County, and all individual Defendants of Nevada County. Plaintiff Minor H.S., by and through his Guardian *ad Litem*, RICHARD HYDE, as LINDA MILLER's son, is LINDA MILLER's successor-in-interest and also brings this action for violations of her civil rights under the First and Fourteenth

THIRD AMENDED COMPLAINT
FOR DAMAGES                          -4-

Amendments and California state law.

17.     Plaintiff CHRISTINA HYDE, the mother of LINDA MILLER, brings this action for violations of her civil rights under the First and Fourteenth Amendments. She is further suing for violations of California state law as against COUNTY OF SUTTER, COUNTY OF NEVADA, all individual Defendants of Sutter County, and all individual Defendants of Nevada County.

18.     Plaintiff H.S., the minor son of LINDA MILLER, is suing through his uncle and Guardian *Ad Litem*, RICHARD HYDE. He is suing for violations of his civil rights under the First and Fourteenth Amendments. He is further suing for violations of California state law as against COUNTY OF SUTTER, COUNTY OF NEVADA, all individual Defendants of Sutter County, and all individual Defendants of Nevada County.

**Sutter County Defendants**

19.     Defendant COUNTY OF SUTTER is a public entity, duly organized and existing under the laws of the State of California.  Under its authority, Defendant COUNTY OF SUTTER operates and manages Sutter County Jail, and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the Sutter County Sheriff's Department, and its respective employees and/or agents.  Sutter County Sheriff's Department operates Sutter County Jail, and is and was responsible for ensuring the provision of emergency and basic medical and mental health care services to all Sutter County Jail prisoners.  Defendant COUNTY OF SUTTER has authority to sue and be sued, to purchase and make contracts, to dispose of and resolve legal actions and tort claims, to provide for jails and corrections, and to operate and/or be responsible for county health facilities, such as its jails through contracts, joint ventures or partnerships. The Sutter County Sheriff's Department is a governmental department fully funded and overseen by the COUNTY OF SUTTER. As such, Defendant COUNTY OF SUTTER is responsible for all deputy training, discipline, hiring, firing, maintaining deputy and staff records, and to taking corrective actions as it affects the Sutter County Sheriff's Department and its jails, prisoners and pretrial detainees and deputy officers and staff. Defendant COUNTY OF SUTTER's Health and Human Services – Public Health Branch administers the operation of the Jail Medical Services and behavioral services program. Effective May 1, 2017, the COUNTY OF SUTTER entered into a contract with Defendant CFMG (acquired by H.I.G. in January

2013) to provide through its employees, agents and representatives medical, dental and mental health care to COUNTY jails. In this respect, CFMG, now known as WELLPATH and H.I.G. through its executives, officers, leadership, employees, agents and representatives, provide a governmental function and stand in the same capacity as COUNTY OF SUTTER in carrying out their duties at the Sutter County Jail. COUNTY OF SUTTER, jointly with CFMG, was and is responsible to develop joint policies and procedures affecting the mentally ill in custody and to provide continuity of care from the time a detainee is booked until they are released. COUNTY OF SUTTER was and is responsible for overseeing that CFMG staff complies with their contractual medical responsibilities to prisoner's mental health care.

      20.     Defendant BRANDON BARNES is, and was at all relevant times mentioned herein, the Sheriff of the COUNTY OF SUTTER, the highest position in the Sutter County Sheriff's Department. As Sheriff, Defendant BARNES is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Sutter County Sheriff's Department custodial employees and/or agents and DOES 1 through 10.  Defendant BARNES is and was charged by law with the administration of the Sutter County Jail, with the assistance of a small group of executive officers. Defendant BARNES is and was responsible for assuring the prompt transfer of mentally or medically ill prisoners to appropriate out-of-facility placements, including to other correctional facilities for courtesy housing.  Defendant BARNES also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Sutter County Sheriff's Department alleged herein were committed. Defendant BARNES is being sued in his individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of prisoners with mental health issues. Sheriff BARNES's affirmative conduct involves his failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury. Defendant BARNES failed to adequately monitor the administration of the contract with H.I.G., CMFG/WELLPATH even though he had been repeatedly alerted to their pattern of unconstitutional conduct and knew that the jail had become unsafe for those with mental health needs like LINDA

THIRD AMENDED COMPLAINT
FOR DAMAGES
-6-

1  MILLER.

2       21.     Defendant COMMANDER DAN BUTTLER is, and was at all relevant times mentioned

3  herein, the Sutter County Jail Division Commander.  Defendant BUTTLER is and was responsible for the

4  hiring, screening, training, retention, supervision, discipline, counseling, and control of all Sutter County

5  Sheriff's Department custodial employees and/or agents and DOES I through 10.  Defendant BUTTLER

6  is and was responsible for the administration of the Sutter County Jail, and upon information and belief

7  reports directly to Defendant BARNES.  Upon information and belief, Defendant BUTTLER is and was

8  responsible for ensuring the execution of the Sheriff's duties with respect to jail operations.  Defendant

9  BUTTLER is and was also responsible for the promulgation of the policies and procedures and allowance

10  of the practices/customs pursuant to which the acts of the Sutter County Sheriff's Department alleged

11  herein were committed.  Defendant BUTTLER is being sued in his individual capacity.

12       22.     Defendant NORMAN BIDWELL is, and was at all relevant times mentioned herein, the

13  Sutter County Jail Corrections Lieutenant.  Defendant BIDWELL is and was the second in command at

14  Sutter County Jail.  He is and was responsible for the hiring, screening, training, retention, supervision,

15  discipline, counseling, and control of all Sutter County Sheriff's Department custodial employees and/or

16  agents and DOES I through 10.  Upon information and belief, Defendant BIDWELL is and was

17  responsible for the administration of the Sutter County Jail, and reports directly to Defendants BARNES

18  and BUTTLER.  Upon information and belief, Defendant BIDWELL is and was responsible for ensuring

19  the execution of the Sheriff's duties with respect to jail operations, including the prompt transfer of

20  mentally or medically ill prisoners to appropriate out-of-facility courtesy housing placements.  Defendant

21  BIDWELL is and was also responsible for the promulgation of the policies and procedures and allowance

22  of the practices/customs pursuant to which the acts of the Sutter County Sheriff's Department alleged

23  herein were committed.  Defendant BIDWELL is being sued in his individual capacity.

24       23.     Defendant SERGEANT KRISTIE M. GARZA is, and was at relevant times mentioned

25  herein, a Correctional Sergeant employed in the Sutter County Jail. As a Sergeant, Defendant GARZA is

26  a supervisor at the Sutter County Jail. Defendant GARZA was responsible for initiating and ensuring the

27  transfer of LINDA MILLER to the COUNTY OF NEVADA Wayne Brown Correctional Facility.

28  GARZA, at all relevant times, knew that Sutter County Jail would not be able to accommodate LINDA

THIRD AMENDED COMPLAINT        -7-
FOR DAMAGES

MILLER due to her medical issues and the limited accommodations of the Sutter County Jail. GARZA negligently took custody of LINDA MILLER after NEVADA COUNTY's Wayne Brown Correctional Facility relinquished custody of her knowing that Sutter County Jail could not provide her adequate medical and mental health care and could not adequately accommodate her disability appliance. Defendant GARZA is being sued in her individual capacity.

24.     Defendant BRENDA FRANKS was at all relevant times mentioned herein a Licensed Marriage and Family Therapist at Sutter County Jail, and was an employee and/or agent of H.I.G., CFMG/WELLPATH, and COUNTY OF SUTTER. Defendant FRANKS was responsible for providing mental health care to LINDA MILLER, as well as assessing suicide risk for LINDA MILLER. Defendant FRANKS evaluated LINDA MILLER and had direct knowledge that MILLER expressed that she had a previous diagnosis of depression and bipolar; previously attempted suicide twice; had previously taken psychiatric medication Prozac, Lithium, Geodon, and Seroquel; was on suicide watch in previous incarcerations because she had stopped taking her psychotropic medications; had not slept since she got to jail and is starting to hallucinate; felt hopeless; experienced a reject rejection or loss in her court case; and felt presently guilty or worthless. Defendant FRANKS had direct contact with LINDA MILLER in the days leading up to her death, had actual notice of LINDA MILLER's grave condition and need for emergency treatment and psychiatric hospitalization, and acted with deliberate indifference by failing to take necessary steps to provide such treatment. Defendant FRANKS is being sued in her individual capacity.

25.     Defendant MARETTE COOPER was at all relevant times mentioned herein, Sutter County Jail corrections officer. COOPER was assigned to work at Sutter County Jail, and was responsible for carrying out Sutter County Jail policies and procedures and for ensuring the safety of prisoners at the Jail. COOPER was assigned to work on the floor for the women's section of the Jail on the night of April 19 and the morning of April 20, 2019, when LINDA MILLER hung herself from a bedsheet inside her cell. Defendant COOPER failed to conduct regular safety checks, failed to timely identify that LINDA MILLER's life was in danger, and failed to timely summon medical care when it was discovered that LINDA MILLER's life was in danger. Defendant COOPER is being sued in her individual capacity.

THIRD AMENDED COMPLAINT
FOR DAMAGES                          -8-

26.     Defendant ASHLEY MOSELEY was at all relevant times mentioned herein, Sutter County Jail corrections officer. MOSELEY was assigned to work at Sutter County Jail, and was responsible for carrying out Sutter County Jail policies and procedures and for ensuring the safety of prisoners at the Jail. MOSELEY was assigned to work on the floor for the women's section of the Jail the morning of April 20, 2019, when LINDA MILLER hung herself from a bedsheet inside her cell. Defendant MOSELEY knew that LINDA MILLER had tried to commit suicide in Nevada County before arriving at the Sutter County Jail on April 16, 2019. Despite this knowledge, Defendant MOSELEY failed to conduct regular safety checks that complied with Sutter County Sheriff Office policy and complied with Title 15 Standard § 1027.5, failed to identify LINDA MILLER as a suicidal inmate and failed to house her accordingly in a cell with more frequent safety checks; failed to timely identify that LINDA MILLER's life was in danger, and failed to timely summon medical care when it was discovered that LINDA MILLER's life was in danger. Defendant MOSELEY is being sued in her individual capacity.

**Nevada County Defendants**

27.     Defendant COUNTY OF NEVADA is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant COUNTY OF NEVADA operates and manages the county jail (Wayne Brown Correctional Facility) and is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Nevada County Sheriff's Department, and its respective employees and/or agents. Nevada County Sheriff's Department operates the Wayne Brown Correctional Facility, and is and was responsible for ensuring the provision of emergency and medical and mental health care services to all Nevada County Jail prisoners. Defendant COUNTY OF NEVADA has authority to sue and be sued, to purchase and make contracts, to dispose of and resolve legal actions and tort claims, to provide for jails and corrections, and to operate and/or be responsible for county health facilities, such as its jails through contracts, joint ventures or partnerships. The Nevada County Sheriff's Department is a governmental department fully funded and overseen by the COUNTY OF NEVADA. As such, Defendant COUNTY OF NEVADA is responsible for all deputy training, discipline, hiring, firing, maintaining deputy and staff records, and to taking corrective actions as it affects the Nevada County

THIRD AMENDED COMPLAINT
FOR DAMAGES                          -9-

Sheriff's Department and its jails, prisoners and pretrial detainees and deputy officers and staff. From January 1, 2016 until June 30, 2019, the COUNTY OF NEVADA entered into a contract with Defendant CFMG (acquired by H.I.G. in January 2013) to provide through its employees, agents and representatives medical, dental and mental health care to COUNTY adult and juvenile correctional facilities. The contract was later extended multiple times to December 31, 2020. In this respect, CFMG, now known as WELLPATH and H.I.G. through its executives, officers, leadership, employees, agents and representatives, provide a governmental function and stand in the same capacity as COUNTY OF NEVADA in carrying out their duties at the Nevada County correctional facilities. COUNTY OF NEVADA, jointly with CFMG, was and is responsible to develop joint policies and procedures affecting the mentally ill in custody and to provide continuity of care from the time a detainee is booked until they are released. COUNTY OF NEVADA was and is responsible for overseeing that CFMG staff complies with their contractual medical responsibilities to prisoner's mental health care.

28.     Defendant SHANNAN MOON is, and was at all relevant times mentioned herein, the Sheriff of the COUNTY OF NEVADA, the highest position in the Nevada County Sheriff's Department. As Sheriff, Defendant MOON is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Nevada Sheriff's Department custodial employees and/or agents and DOES 11 through 20. Defendant MOON is and was charged by law with the administration of the Wayne Brown Correctional Facility, with the assistance of a small group of executive officers. Defendant MOON also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Nevada County Sheriff's Department alleged herein were committed. Defendant MOON is being sued in her individual capacity as a supervisory official for her own culpable action or inaction in the training, supervision, or control of her subordinates, or for her acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of prisoners with mental health issues. Sheriff MOON's affirmative conduct involves her failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which she knew or reasonably should have known, would cause others to inflict the constitutional injury. Defendant MOON failed to adequately monitor the administration of the contract with H.I.G., CMFG/WELLPATH

even though she had been repeatedly alerted to their pattern of unconstitutional conduct and knew that the jail had become unsafe for those with mental health needs like LINDA MILLER.

29.    Defendant JEANNETTE MULLENAX was, at all relevant times mentioned herein, a Deputy Officer at Wayne County Correctional Facility. Defendant MULLENAX improperly took steps to discharge LINDA MILLER for transfer to Sutter County Jail despite knowing that Sutter County Jail was not equipped to provide her adequate medical and mental health care. Defendant MULLENAX had direct contact with LINDA MILLER in the days leading up to her death, had actual notice of LINDA MILLER's physical condition, and acted with deliberate indifference by failing to take necessary steps to ensure that she received proper treatment. Defendant MULLENAX is being sued in her individual capacity.

### H.I.G.'s Ownership, Management Partnership, and Control
### of WELLPATH, CMGC-CCS, and CFMG

30.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP ("CFMG" AKA CORRECTIONAL MEDICAL GROUP COMPANIES Inc. or "CMGC"[1] since 2013, and now AKA as WELLPATH, since October 1, 2018)[2], hereinafter they will jointly be referred to as "CFMG" or "CFMG/CMGC" or "CFMG/WELLPATH" or "CFMG/CMGC/WELLPATH".

31.    CFMG is a California corporation licensed to and doing business in the State of California, as a contracted provider of medical and mental health services to the COUNTY OF NEVADA and COUNTY OF SUTTER, SHERIFF BARNES, SHERIFF MOON, and their jail systems.

32.    It has a business address in Monterey County and in San Diego County, and since October 1, 2018, in Nashville, Tennessee as WELLPATH.[3]

---

[1] H.I.G. acquired CFMG, rebranding its name under the umbrella of Correctional Medical Group Companies (CMGC) in 2013, *see* https://www.linkedin.com/company/correctional-medical-group-companies-inc-, and https://www.linkedin.com/company/ca-forensic-medical-group.

[2] October 1, 2018, H.I.G. Capital, LLC announced acquisition and joining of forces of CMGC (albeit CFMG) with Correct Care Solutions ("CCS"), creating a partnership with management, to be headquartered in Nashville Tennessee. *See* https://higcapital.com/news/release/1128. This acquisition was rebranded and renamed Wellpath. *See* https://en.wikipedia.org/wiki/Correct Care Solutions. CMGC website advertises that it was founded in 1983 (the year CFMG was created) and gives notice that "We are now Wellpath!" *See* www.cmgcos.com; https://www.linkedin.com/company/correctional-medical-group-companies-inc- https://www.bizjournals.com/nashville/news/2018/11/07/one-of-nashvilles-largest-private-companies-merges.html.

[3] CFMG sets itself up as incorporated in Nashville Tennessee. *See* http://www.buzzfile.com/business/California-Forensic-Medical-Group,-Incorporated-831-649-8994.

THIRD AMENDED COMPLAINT                    -11-
FOR DAMAGES

33.     At all material times, CFMG was and is owned and controlled by H.I.G. Capital. CFMG acts on behalf of H.I.G. and was and is responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents of the CFMG, including DOES 1-20.)

34.     CFMG was initially founded by DEFENDANT DR. TAYLOR FITHIAN and Elaine Hustedt in 1983 as a private for-profit correctional health care provider who at all relevant times herein, providing services to approximately 65 correctional facilities in 27 California counties (including Sutter and Nevada), or about 90 percent of outsourced county jail private medical care in California.[4]

35.     Defendant H.I.G. CAPITAL LLC, (hereinafter "H.I.G.") is a private equity firm doing business in California county jails.

36.     H.I.G. acquired CFMG in 2013[5] and rebranded its name to Correctional Medical Group Companies (CMGC) that same year. H.I.G. is the owner, manager and partner of CFMG (aka CMGC and now known as WELLPATH[6]), which is employed to provide delivery of medical services to prisoners and was and is responsible for the management, hiring, retaining, training, and supervising of the conduct, policies and practices, customs, standards, finances, of its employees, managers, supervisors, contractors, leaders in the service of providing medical care to prisoners, including prisoners such as LINDA MILLER at Sutter County jail and Nevada County jail, including DOES 1-20.

37.     CFMG executives, directors, supervisors and managers, physicians, nurses, LVN and mental health providers act on behalf of H.I.G. and CFMG. H.I.G. is the alter ego of CFMG/WELLPATH, and/or alternatively CFMG/WELLPATH act on behalf of H.I.G. who have control over them.

38.     H.I.G. accomplishes this inter alia, by placing its in-house professional and expertise as board members of CFMG to ensure their control over CFMG. There is unity of interest and ownership such that the separate personalities of H.I.G. and CFMG no longer exist as CFMG and their employees

---

[4] Brad Branan, "California for-profit company faces allegations of inadequate inmate care", January 17, 2015, SACRAMENTO BEE, at p. 4, *available at* www.sacbee.com/news/investigations/the-public-eye/article7249637.html.
[5] H.I.G. Capital Announced Strategic Investment in California Forensic Medical Group, Jan. 7, 2013, *available at* https://higcapital.com/news/release/621. CFMG is also known as Correctional Medical Group Companies (CMGC). https://higcapital.com/portfolio/company/277m.
[6] Wellpath web page announces that it was founded in 1983 (the year CFMG was founded) and that it was formerly known as CMGC, CFMG and CCS. *See* https://pitchbook.com/profiles/company/55890-10 and www.wellpathcare.com.

THIRD AMENDED COMPLAINT
FOR DAMAGES

1   and agents act with the consent, management, approval, ratification and direction of H.I.G.

2         39.    H.I.G. places at least two Managing Directors and one Principal of its private equity team

3   as Board members, Chief Financial Officers, or other executive officers of CFMG aka CMGC to ensure

4   continuity of control and management over CFMG/WELLPATH. These high-ranking H.I.G. members

5   include, but are not limited to, Justin Reyna, an H.I.G. Managing Director who serves as a Board

6   Member of CFMG aka CMGC; Michael Kuritzky, an H.I.G. Principal who serves as a Chief Financial

7   Officer and Secretary of CFMG aka CMGC; and Rob Wolfson, an H.I.G. Managing Director who is

8   intimately involved in the day-to-day management of CFMG aka CMGC. H.I.G. employees are routinely

9   appointed to WELLPATH/CFMG's Board of Directors to ensure financial control over its affairs.

10   Additionally, they have knowledge of H.I.G.'s contractual relationship with WELLPATH, who has

11   subsumed CFMG, and how H.I.G. employees are appointed to WELLPATH/CFMG's board of directors

12   and the duties of its board members."

13         40.    Before acquiring CFMG through joining CFMG, CMGC, and CCS and renaming them

14   WELLPATH, H.I.G. knew or should have known of the pervasive unconstitutional conduct of these

15   companies. H.I.G. knew this and acquired this information through performing due diligence analysis

16   prior to acquiring CFMG, CMGC and CCS. It made the decision that providing mental health care in jails

17   was a financially lucrative business to acquire, control and manage, and have adjusted their private equity

18   fund investments and operational structure to capitalize on sick and mentally ill prisoners in jail systems

19   across California. H.I.G.'s use of CFMG/WELLPATH is but a mere shell, an instrumentality or conduit

20   for the business of financially profiting from providing mental/medical care to the mentally ill in jails

21   through these shell companies. H.I.G. acquired CFMG and created CMGC in 2013.

22         41.    On October 1, 2018, H.I.G. announced that it acquired CCS and merged it with CMGC.

23         42.    H.I.G. renamed CCS-CMGC "WELLPATH" in October 2018, for the purpose of carrying

24   H.I.G.'s ownership and financial interests in providing jail mental and medical health care and so H.I.G.

25   controls the assets and financial gains while CFMG as WELLPATH assume the liabilities. WELLPATH

26   is H.I.G.'s 23rd control investment in healthcare since 2008 and is its 14th current platform in the sector.

27   WELLPATH is estimated to generate $1.5 billion annually.[7]

28   _____

[7] HIG Capital, "Correct Care Solutions and Correctional Medical Group Companies Join Forces to

43.     In October 1, 2018, H.I.G. publicly announced that "[o]ver the years, as the country's health care system has changed; we have seen more and more individuals with acute mental health diagnosis and substance use disorders being treated by our doctors, nurses and clinicians in correctional settings."[8]

44.     A Managing Director of H.I.G. announced, "We are proud of what we have accomplished since partnering with CMGC in 2012, and excited to bring these two companies together."[9]

45.     H.I.G. and H.I.G. Defendants knew that behavioral and mental healthcare, in particular, located in state and federal correctional facilities or civil commitment centers have become repositories particularly for the vulnerable mentally ill population growing across the United States and they decided to capitalize on this vulnerable population.

46.     H.I.G. uses the corporate entity as a shield against personal liability and harm caused to the mentally ill in jails.

47.     Recognition of H.I.G. as a separate corporate entity would promote injustice and defeat the rights and equities of persons such as LINDA MILLER and Plaintiffs; it would enable and facilitate continued CFMG/WELLPATH and H.I.G. unconstitutional conduct, practices, customs and policies, actions and inactions that harm this particularly vulnerable jail population and discourage abatement of these unconstitutional actions and inactions.

48.     Defendant DR. TAYLOR FITHIAN is, and was at all relevant times mentioned herein, the founder and President of CFMG and an employee and/or agent of H.I.G./CFMG. Defendant FITHIAN is a Board-certified psychiatrist and oversees the delivery of medical, mental health and dental care in all CFMG-served facilities, including standards of medical care and utilization review.

49.     Defendant FITHIAN is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of CFMG alleged herein were committed. At all times mentioned herein he was acting under color of law. He is being sued in his individual and official capacities.

---

Deliver Best-in-Class Healthcare." HIG CAPITAL NEWS, October 1, 2018, *available at* https://higcapital.com/news/release/1128.
[8] *Id.*
[9] *Id.*

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -14-

50. Defendant KIP HALLMAN, CEO (hereinafter "HALLMAN"), is and at all times herein mentioned was employee and/or agent of H.I.G. acting on behalf of H.I.G., CFMG/WELLPATH, and the Executive Officer for CFMG now known as WELLPATH.

51. HALLMAN is also President of WELLPATH that has merged CMGC (who owns CFMG) and CCS (known as CCS-CMGC and now also known as WELLPATH, which are all under the ownership, supervision, management and direction of H.I.G. and CFMG/WELLPATH. HALLMAN had and has the duty and responsibility for managing and overseeing all CFMG/WELLPATH medical delivery operations, including those at the COUNTY OF SUTTER and COUNTY OF NEVADA Jails. HALLMAN is and was responsible for promulgation of policies, procedures and allowance of the practices/customs pursuant to which the acts of H.I.G., CFMG/WELLPATH and its employees and agents, alleged herein were committed. At all times mentioned herein he was acting under color of law. Defendant HALLMAN is sued in his individual and official capacities for damages.

52. Medical care providers, employees and agents (such as H.I.G. and the companies it owns and controls/CFMG, WELLPATH), employed by a government entity are state actors for 42 U.S.C. § 1983 purposes acting under color of law when providing and delivering medical services to prisoners and/or implementing policies and practices regarding provision of medical care that directly affect the day to day delivery of health care to prisoners and pretrial detainees.

53. Private managers, executives, managers, owners, directors, board members, supervisors, (such as H.I.G./CFMG) employed to direct the delivery of medical care to prisoners are state actors acting under color of law for purposes of § 1983.

54. At all material times, each of H.I.G/CFMG supervisors, managers or executives were responsible for the hiring, retaining, training, and supervising of the conduct, customs, policies and practices of its member employees and agents of H.I.G./CFMG.

55. CFMG, now WELLPATH (owned by H.I.G.), on information and belief with approval of H.I.G., entered into a contract with COUNTY OF SUTTER on May 1, 2017 to provide for medical and mental health services of those incarcerated and detained Sutter County Jail.

56. Since 1992, CFMG/CMGC, now WELLPATH (owned by H.I.G.), has been providing medical services for the COUNTY OF NEVADA jails., the COUNTY OF NEVADA renewed the

THIRD AMENDED COMPLAINT
FOR DAMAGES

-15-

contract for services, on information and belief with the approval of H.I.G., for CFMG/CMGC, now WELLPATH, to provide for medical, mental health, and dental services of those incarcerated in the Nevada County jails, including the Wayne Brown Correctional Facility. The existing contract between COUNTY OF NEVADA and CFMG/GMGC (now WELLPATH), that on information and belief, was entered into with the express approval of H.I.G., currently runs through December 31, 2020.

57.    Plaintiffs allege that Defendants Franks, CFMG, WELLPATH, FITHIAN, HALLMAN, and DOES 1-20, were and are acting on behalf of Defendant H.I.G. and were and are agents of H.I.G. and therefore H.I.G. is responsible for their conduct as described in this Complaint. On information and belief, H.I.G. gave CFMG Defendants authority to act on its behalf and thus CFMG, WELLPATH, FITHIAN, and DOES 1-20 were and are H.I.G.'s agents. Each defendant was, and is, the agent of the other and at all relevant times was acting as the agent and on behalf of the other.

58.    H.I.G. exercises sufficient control over CFMG now WELLPATH's activities such that CFMG/WELLPATH is a mere agent or instrumentality of H.I.G.

59.    H.I.G. places its senior partner and/or members on the boards or managing bodies of CFMG/WELLPATH in order to maintain a high degree of day-to-day control over CFMG/CMGC/WELLPATH's activities. Michael Kuritzky was and is the Secretary and Chief Financial Officer of CFMG/CMGC/WELLPATH, while serving as a Principal of H.I.G. Justin Reyna was and is on the board of CFMG/CMGC/WELLPATH, while serving as a Managing Director of H.I.G. Rob Wolfson was and is intimately involved with the day-to-day management of CFMG/CMGC/WELLPATH, while serving as a Managing Director of H.I.G.

60.    H.I.G. acts through its employees, agents, directors, officers and is responsible for the acts of its employees, agents, directors, and officers performed within the scope of such agency. CFMG/WELLPATH, FIFTHIAN, FRANKS, and HALLMAN, were and are acting on behalf of Defendant H.I.G. and were and are agents of H.I.G. and therefore H.I.G. is responsible for their conduct as described in this complaint. For instance, as Secretary and Chief Financial Officer, Michael Kuritzky, a Principal of H.I.G., is responsible for the financial affairs of CFMG/CMGC/WELLPATH. His duties involve tracking cash flow and financial planning as well as analyzing the CFMG/CMGC/WELLPATH'S financial strengths and weaknesses and proposing corrective actions. As

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -16-

Secretary, he is in charge of all the records and documentation for CFMG/CMGC/WELLPATH.

61.     H.I.G. has seats on the board of CFMG/CMGC/WELLPATH and controls, manages, and approves major policy decisions of CFMG/CMGC/WELLPATH.

62.     When CFMG aka CMGC merged with another company (Correct Care Solutions) to form CCS-CMGC (later known as WELLPATH), Mr. Wolfson announced in a press release dated October 1, 2018, "We are proud of what we have accomplished since partnering with CMGC in 2012, and are very excited to bring these two leading companies together."

63.     Rob Wolfson, a Managing Director further affirmatively stated, "[H.I.G.] believe[s] we have combined the industry's two best management teams."

64.     CFMG/WELLPATH undertakes their provision of jail medical and mental health services with the understanding that H.I.G. is the principal in control of those activities, H.I.G. has authorized and in fact encouraged CFMG to conduct those activities in a manner that contains costs and jeopardizes the lives of individuals who have mental illnesses, and H.I.G. has or should have knowledge of all material facts about CFMG/WELLPATH's actions.

65.     H.I.G. ratifies the conduct of CFMG/WELLPATH by knowingly accepting the risks of jail medical services and mental health services. Despite knowledge of the unconstitutional actions and inactions causing harm to California's sick and mentally ill incarcerated and/or pretrial detainee vulnerable residents, WELLPATH is H.I.G.'s 23rd control investment in healthcare since 2008 and is its 14th current platform in the sector.

66.     The true names and identities of Defendants DOES 1 through 20 are presently unknown to Plaintiffs.  Plaintiffs allege that each of Defendants DOES 1 through 20 was employed by the COUNTY OF SUTTER and/or the Sutter County Sheriff's Department, COUNTY OF NEVADA and/or the Nevada County Sheriff's Department, and/or H.I.G., CFMG/WELLPATH to work in correctional facilities in Sutter County at the time of the conduct alleged herein. Plaintiffs allege that each of Defendants DOES 1 through 10 was deliberately indifferent to LINDA MILLER's medical needs and safety, failed to provide necessary psychiatric care to her or take other measures to prevent her from attempting suicide, violated her civil rights, wrongfully caused her death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiffs further allege that

Defendants DOES 1 through 10 violated Plaintiffs' First and Fourteenth Amendment rights and rights under California state law.  Plaintiffs further allege that each of Defendants DOES 1 through 10 was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of medical, mental health, and jail custody employees and/or agents involved in the conduct alleged herein. Each DOE defendant was an employee/agent of the COUNTY, H.I.G., CFMG/WELLPATH, and/or of each other, and at all material times acted under color of law within the course and scope of that relationship.

67.     Plaintiffs will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 20 have been ascertained.

68.     Defendant COUNTY OF SUTTER is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California.  At all times relevant to the instant complaint, Defendant COUNTY OF SUTTER employed Defendants BARNES, BUTTLER, BIDWELL, GARZA, FRANKS, COOPER, CFMG/CMGC/WELLPATH/H.I.G., FITHIAN, HALLMAN, and DOES 1 through 20.

69.     Defendant COUNTY OF NEVADA is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California.  At all times relevant to the instant complaint, Defendant COUNTY OF NEVADA employed Defendants MOON, MULLENAX, CFMG/CMGC/WELLPATH/H.I.G., FITHIAN, HALLMAN, and DOES 1 through 20.

70.     Defendants BARNES, BUTTLER, BIDWELL, GARZA, FRANKS, COOPER,  MOON, MULLENAX, FITHIAN, HALLMAN, and DOES 1 through 20, and each of them, to the extent they engaged in any acts or omissions alleged herein, engaged in such acts or omissions under color of state law.

71.     Plaintiffs are informed and believe and thereon allege that at all times mentioned in this Complaint, Defendants were the agents, employees, servants, joint venturers, partners and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

/ / /

/ / /

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -18-

## EXHAUSTION OF PRE-LAWSUIT PROCEDURES

## FOR STATE LAW CLAIMS

72.     Plaintiffs filed government tort claims with Defendant COUNTY OF SUTTER, including on behalf of the Estate of LINDA MILLER, on September 30, 2019.  By correspondence dated November 18, 2019, the COUNTY OF SUTTER rejected the claims on behalf of Plaintiffs.

73.     Plaintiffs filed government tort claims with Defendant COUNTY OF NEVADA, including on behalf of the Estate of LINDA MILLER, on September 30, 2019.  By correspondence dated November 6, 2019, the COUNTY OF NEVADA rejected the claims on behalf of Plaintiffs.

## FACTUAL ALLEGATIONS

74.     LINDA MILLER was born on April 3, 1986 in Paradise, California and was raised primarily in Butte County and Glenn County by her mother, CHRISTINA HYDE, and her stepfather, Steven Hyde.

75.     LINDA MILLER had a minor son, H.S., with whom she had an extremely close and loving relationship. MILLER was devoted to her mother, CHRISTINA HYDE. LINDA MILLER was HYDE's only child and best friend. They spoke at least once a day. When H.S. was born, MILLER moved to Oroville to be closer to HYDE, and they lived together at times to provide emotional and financial support to one another. MILLER had a tight-knit relationship with her family members, who lived close by and would see each other frequently, including for meals, holidays, and special occasions.

76.     Anyone who knew MILLER would say that she was a caring daughter and a doting, committed, and devoted mother to H.S.

### Linda Miller's Mental Health History

77.     Starting in or around high school, LINDA MILLER began struggling with substance abuse and exhibiting symptoms of mental illness, including depression and anxiety.

78.     MILLER was diagnosed with post-traumatic stress disorder ("PTSD") by a physician at Glenn Family Medical Center due to a car accident in 2003. At the same time, she was diagnosed with severe depression and was prescribed psychiatric medication.

79.     For different periods in her life, LINDA MILLER was treated by various mental health professionals and counselors.

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -19-

80.     LINDA MILLER would fluctuate between normative behavior and more agitated, disturbed periods. During periods of instability, she struggled with anxiety, aggression, and substance abuse. This behavior led to interactions with the criminal justice system, including arrests and incarceration.

81.     LINDA MILLER battled drug addiction for many years, but turned her life around for her son, H.S., who was born on January 26, 2014. During periods of stability, she attended substance abuse and recovery related rehabilitation classes, sought counseling, and went back to Butte College to complete her college education. She completed substance abuse rehabilitation at Johnson House Sober Living Environment in 2015 and became an ambassador for their program after successfully graduating and achieving sobriety. She was fully employed and financially independent at the time of her death.

82.     LINDA MILLER's depression, PTSD, anxiety and other mental health needs were disabilities that affected her activities of daily living, and she suffered from these disabilities when she was arrested and jailed in April 2019.

**Linda Miller's Arrest**

83.     On August 31, 2018, LINDA MILLER was involved in a car accident that resulted in a head-first collision and tragically ended in two fatalities. She was severely injured and taken immediately to U.C. Davis Hospital for multiple surgeries. The accident left LINDA MILLER in a coma for days, broke both her legs, fractured her spine, necessitated surgery to remove part of her bowels, and so impaired her ability to walk that she needed a wheelchair. Until her death, LINDA MILLER had not fully recovered from her injuries, which according to her medical records, included widespread hemorrhages, lacerations, and fractures. LINDA MILLER was confined to a wheelchair after enduring serious injuries to her leg and foot, and was sent home to recuperate. To manage the chronic pain, she was prescribed opioid painkillers, developed an addiction, and used heroin to self-medicate.

84.     At the end of 2018, the Camp fire ravaged her hometown of Paradise, California. The apartment in which LINDA MILLER lived with H.S., her then 4-year old son, and her partner Terry Seaman, was destroyed by the fire. Her belongings perished in the flames, and without insurance, she could not recover the value of her possessions. For more than two months, she and H.S. lived in a motel room at the Heritage Inn Express. CHRISTINA HYDE visited them every day.

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -20-

85.     The impact of the car accident and the Camp fire was devastating for LINDA MILLER's physical and mental health. The car accident and her subsequent loss of mobility started a downward spiral for LINDA MILLER and catapulted her into depression, hopelessness, and despair. She began to self-medicate with Dilaudid (a powerful opioid) and heroin to ease the excruciating physical pain that she was in, undoing the years she worked towards sobriety. The opioid painkillers elevated her risk for depression, anxiety and other mental disorders.

86.     In or around April 2019, LINDA MILLER received notice that charges of vehicular manslaughter stemming from the car accident were filed against her in Sutter County. On or around the same time, she developed an infection in her leg due to complications from a surgery in connection to the accident. At the Enloe Medical Center, LINDA MILLER required additional surgeries to remove two metal rods in her legs. She had not yet fully recovered from her surgeries when she was required to appear in court for her arraignment.

87.     On April 15, 2019, LINDA MILLER voluntarily appeared at her court date in the Superior Court of California, County of Sutter for an arraignment on the criminal charges. At the arraignment, a family member of the deceased made vitriolic and vengeful public statements towards LINDA MILLER, demanding punishment to the greatest degree allowed by law. LINDA MILLER's uncle, Richard Hyde, and her partner, Terry Seaman, sought permission to speak on her behalf to mitigate the effect of the victim's statements on the court. Their attempts were denied by the court. For CHRISTINA HYDE and her family, it felt like LINDA MILLER had already been convicted and was going through a sentencing hearing. LINDA MILLER was remanded to custody of the Sutter County Sheriff's Office at the arraignment and her bail was set at $1,000,000. She was ordered to return to court on April 19, 2019 at 9:00 a.m. for a subsequent hearing. The last words LINDA MILLER would ever say to CHRISTINA HYDE were, "please bail me out, Mommy."

**Linda Miller Remanded to Sutter County**

88.     On April 15, 2019, LINDA MILLER was arrested at the Sutter County Courthouse and transported to the Sutter County Jail.

89.     LINDA MILLER's partner, Terry Seaman, called the Sutter County Jail to vocalize his concern to the jail staff that LINDA MILLER was addicted to heroin and Dilaudid, and was strongly

THIRD AMENDED COMPLAINT
FOR DAMAGES                         -21-

susceptible to a heightened mental health risk and suicide risk while incarcerated. Upon information and belief, that information was never recorded in LINDA MILLER's file.

90.     On April 15, 2019, a nurse employed by the Sutter County Jail conducted a medical intake at the Sutter County Jail. As for past medical problems, LINDA MILLER indicated that she was in a motor vehicle accident August 2018, which left fractures in her legs, feet, cervical spine, and spine area, and necessitated removal of part of her intestines. LINDA MILLER indicated that she was feeling pain and that it was at a scale of 6 out of 10. The screening asked for history of drug use, to which the nursing staff recorded that LINDA MILLER uses Dilaudid.

91.     Despite LINDA MILLER's extensive injuries and her physical disability, which required around-the-clock monitoring and care, LINDA MILLER was placed in general population instead of placing her in an observation cell or in an area where medical staff could regularly check on her welfare.

92.     LINDA MILLER, as a woman with disabilities who was confined to county jail, sought basic access to jail facilities and programs, accommodation for his disabilities, and non-discriminatory treatment in housing. She was denied access to facilities and programs and denied the freedom from discrimination by COUNTY OF SUTTER because of her disabilities.

**Linda Miller Transferred to Nevada County Due to**

**Lack of Adequate Medical Accommodations in Sutter County Jail**

93.     Shortly after LINDA MILLER was booked in Sutter County Jail, Defendant KRISTIE M. GARZA, the Jail's Correctional Sergeant, immediately contacted Defendant DAN BUTTLER, the Jail's Division Commander, "to let him know we would have a hard time accommodating her in our facility due to her medical issues." On information and belief, "medical issues" referred to one or more of LINDA MILLER's physical and mental health disabilities. Defendant GARZA called other facilities to see if they would "courtesy house" LINDA MILLER. Nevada County agreed to house her.

94.     That evening, April 15, 2019, at 9:40 pm, LINDA MILLER completed an Initial Pre-Booking Health Screening after arriving at the Nevada County's Wayne Brown Correctional Facility. She informed the staff conducting the screening that she had seizures and was taking pain and seizure medication. She also informed the staff that she had received medical treatment prior to booking. The form explicitly stated in bold capitalized letters, "Any YES answers need to be referred to the medical

THIRD AMENDED COMPLAINT
FOR DAMAGES

-22-

staff immediately." Although LINDA MILLER had five "YES" answers, the medical staff of the correctional facility took no action to directly address any of LINDA MILLER's needs or concerns. The medical staff furthermore took no action to review LINDA MILLER's medical records or any screenings performed at Sutter County Jail.

95.     On April 15, 2019, a nurse employed at Nevada County's Wayne Brown Correctional Facility conducted a medical intake with LINDA MILLER. The screening document indicated that LINDA MILLER was previously incarcerated in Sutter County, that she was involved in a motor vehicle accident resulting in nine surgeries and a bilateral leg injury last August. As for medications, LINDA MILLER indicated that she took seizure medication. As for past or present medical problems, LINDA MILLER again informed the Nevada County Jail that she suffered from seizures and had bilateral leg surgeries two weeks ago. When asked if she had a history of drug use, LINDA MILLER responded that she is a chronic user of Dilaudid and last used yesterday. LINDA MILLER's pain scale was an 8 out of 10, indicating that she was in a great deal of pain and the pain was only getting worse with time. After the Intake, Defendants improperly placed LINDA MILLER in a General Population cell, despite the clear signs that she required close observation in a medical setting where she could receive comprehensive individualized monitoring and care.

96.     That same evening, LINDA MILLER completed a medical screening assessment. The Assessment indicated that LINDA MILLER was taking (or needed to take) prescribed "pain and seizure med[ications]." It also indicated that LINDA MILLER had used drugs – "heroin – couple days ago, marijuana – couple days ago." When asked if LINDA MILLER had "night sweats, cough, spit up sputum when [she] cough[ed], fever, weight loss, or loss of appetite," LINDA MILLER responded "yes, all of it." LINDA MILLER was documented as having a "physical disability" due to her wheelchair and that she had gone to the hospital prior to going to the jail. In response to the question "Does the arrestee appear to be sick or injured suggesting the need for medical attention," the officer conducting the intake answered, "Yes, in a wheel chair, medical aware." The officer also indicated that he was "aware of [an] incident that may cause the arrestee to require medical or mental care."

97.     Although COUNTY OF NEVADA corrections officers and medical service employees were placed on notice that LINDA MILLER suffered from seizures; had night sweats, cough, spit up

THIRD AMENDED COMPLAINT
FOR DAMAGES                              -23-

sputum, fever, weight loss, and loss of appetite; knew that she ingested a very powerful and addictive opioid just one day prior; knew that she was physically disabled after a recent debilitating motor vehicle accident; and were aware of one or more incidents that caused her to require medical or mental health care, they failed to provide proper treatment for her stated medical conditions and failed to regularly check on her welfare. Defendants were deliberately indifferent to LINDA MILLER's serious medical needs and knew that LINDA MILLER was not receiving medical treatment and that she was powerless to take care of those needs by herself.

98.     The COUNTY OF NEVADA further denied her basic access to jail facilities and programs, accommodation for his disabilities, and non-discriminatory treatment in housing because of her disabilities. The COUNTY OF NEVADA, Sheriff MOON, and MULLENAX failed to reasonably accommodate LINDA MILLER when they housed her in a manner that was not appropriate for her mental disability and drug addiction. They failed to perform a mental health evaluation, which would have identified her various mental health disabilities. Without such criteria to conduct an evaluation of the appropriate housing in the jail, LINDA MILLER was not reasonably accommodated due to her mental health disability needs. Individuals who are addicted to drugs, have a history of addiction, or who are regarded as being addicted have an impairment under the law. Although LINDA MILLER revealed that she was addicted to drugs, the COUNTY OF NEVADA, Sheriff MOON, and MULLENAX failed to reasonably accommodate her in a suitable and safe setting for her drug addiction.

99.     On information and belief, Defendants BARNES, BUTTLER, BIDWELL, MOON, WELLPATH, H.I.G./CFMG, FIFTHIAN, and DOES 1 through 20 were informed and aware of, or should have been aware of, LINDA MILLER's transfer to Nevada County Jail, her medical condition before and after her transfer, and her dire need for medical and mental health care.

100.    On April 16, 2019, in the early morning before 9:00 a.m., LINDA MILLER nearly died from a painful and protracted opioid related medical crisis. The Wayne Brown correctional staff failed to promptly and timely summon medical care as LINDA MILLER suffered excruciating pain and becoming increasingly catatonic. Hours passed between the time that LINDA MILLER first called for help and the time that the paramedics were actually summoned. The medical staff observed LINDA MILLER's condition dramatically worsen. A nurse employed at Nevada County later wrote that LINDA MILLER

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -24-

had "possible withdrawal-polysubstance abuse." The officers only called an ambulance to transport LINDA MILLER to the hospital when she became unresponsive. Prior to being placed in an ambulance, Fire Rescue administered a nasal spray of Narcan (a drug to counteract the effects of opioids) into LINDA MILLER's nostril.

101.    LINDA MILLER was taken to the Sierra Nevada Memorial Hospital in Grass Valley, California, where she was diagnosed with opioid overdose and opioid use with withdrawal.

102.    Immediately after this medical crisis, Defendant JEANETTE MULLENAX, deputy officer of Wayne Brown Correctional Facility, commenced the process to hastily move LINDA MILLER back to Sutter County despite knowing that Sutter County Jail was not equipped to house LINDA MILLER and that LINDA MILLER was in the middle of a protracted withdrawal process where she was experiencing excruciating pain.  MULLENAX, COUNTY OF NEVADA and the H.I.G./WELLPATH/CMGC/CFMG Defendants chose to omit critical information about Linda's mental health condition and opioid-related medical crisis in the process of transferring her to Sutter County. MULLENAX's actions were performed with deliberate indifference to LINDA MILLER's serious and numerous medical needs, which now included a known opiate withdrawal and/or overdose.

103.    The COUNTY OF NEVADA, SHERIFF MOON, and each of the H.I.G./WELLPATH/CMGC/CFMG Defendants knew or should have known that opiates like Dilaudid and heroin are widely known to have side effects from abrupt cessation including irritability and aggression, cognitive impairments and hallucinations, depression, suicidal thoughts, and mood swings. COUNTY OF NEVADA, SHERIFF MOON, and each of the H.I.G./WELLPATH/CMGC/CFMG Defendants knew or should have known that LINDA MILLER had recently used powerful and addictive opioid drugs and abruptly ceased that usage due to her incarceration. COUNTY OF NEVADA, SHERIFF MOON, and each of the H.I.G./WELLPATH/CMGC/CFMG Defendants knew or should have known that LINDA MILLER was likely to experience onset of or exacerbation of irritability and aggression, cognitive impairments and hallucinations, depression, suicidal thoughts, and mood swings because of this abrupt cessation. Despite this knowledge, they failed to take the necessary steps to assess for the state of LINDA MILLER's mental health condition and to administer appropriate care.

104.    Moreover, the COUNTY OF NEVADA, SHERIFF MOON, and MULLENAX knew or

THIRD AMENDED COMPLAINT
FOR DAMAGES
                                        -25-

should have known that LINDA MILLER'S opioid overdose or opioid use with withdrawal would leave her with lingering withdrawal symptoms and would cause her extreme emotional distress. They also knew or should have known that individuals who become extremely distraught during withdrawal could also become suicidal. Their failure to summon medical care in Nevada County caused LINDA MILLER unnecessary pain, suffering, and mental illness. The failure to summon medical care foreseeably contributed to acute withdrawal symptoms, exacerbation of pain, serious psychological distress, and deepening thoughts of suicide. These mental conditions proximately resulted in LINDA MILLER's uncontrollable impulse to commit suicide, which she tragically committed just days later in Sutter County.

105.    Moreover, the COUNTY OF NEVADA, MOON, and MULLENAX, deliberately failed to care for LINDA MILLER after what appeared to be a suicide attempt. Rather than arrange for the care she needed while in their custody, the COUNTY OF NEVADA deliberately arranged to rehouse her in a Jail that it knew could not accommodate her, and where they knew she was prone to suffer depression and suicidal thoughts as a result.

106.    The COUNTY OF NEVADA, SHERIFF MOON, and each of the H.I.G./WELLPATH/CMGC/CFMG Defendants failed to establish policies, failed to correct existing inadequate policies, or failed to follow their longstanding established policies to do the following: identify whether newly arrived prisoners are suffering from drug withdrawal or will likely suffer from drug withdrawal, monitor prisoners for possible drug withdrawal, provide adequate medical care, supervision or staffing to safely monitor the drug detoxification or withdrawal process, and perform adequate cell checks and to record unusual activity or behavior. The COUNTY OF NEVADA, SHERIFF MOON, and each of the H.I.G./WELLPATH/CMGC/CFMG Defendants failed to provide health training to their employees and medical staff on prisoners with drug withdrawal-related medical issues.

107.    The COUNTY OF NEVADA, Sheriff MOON, and each of the H.I.G./WELLPATH/CMGC/CFMG Defendants further have longstanding policies and customs to relinquish due care for prisoners when they experience a drug-related emergency, thereby creating situations where prisoners in their custody experience consequences like irritability and aggression, cognitive impairments and hallucinations, depression, suicidal thoughts, mood swings, and tragically,

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -26-

1   suicide.

2   108.   The COUNTY OF NEVADA and Sheriff MOON maintained insufficient policies and

3   procedures, and provided inadequate staff training or no training at all, on the provision of emergency

4   medical care to Wayne Brown Correctional Facility prisoners with a serious and/or life-threatening

5   medical condition. These deficiencies include, but are not limited to, insufficient direction as to what

6   circumstances require emergency medical care and the procedure for summoning emergency medical

7   care. These failures directly caused the denial of emergency medical attention and treatment that LINDA

8   MILLER required on April 16, 2019, leading to the preventable near death experience and apparent

9   suicide attempt on April 16, 2019.

10   109.   The COUNTY OF NEVADA and Sheriff MOON also maintained insufficient policies

11   and procedures, and provided inadequate staff training or no training at all, on drug withdrawal

12   assessment, detoxification, and drug treatment procedures for prisoners who are chronic drug users or

13   who exhibit signs of a drug addiction. These failures directly caused the denial of drug detoxification that

14   LINDA MILLER required on April 16, 2019, leading to the preventable near death experience and

15   apparent suicide attempt on April 16, 2019.

16   110.   The COUNTY OF NEVADA and Sheriff MOON also maintained insufficient policies

17   and procedures, and provided inadequate staff training or no training at all, on conducting mental health

18   evaluations of newly admitted prisoners and the provision of appropriate mental health treatment

19   services. This failure directly caused the denial of critical mental health services that LINDA MILLER

20   required on April 16, 2019, despite her history of mental illness, obvious symptoms of mental health

21   crisis, and information that she was under the influence of opioid medication. The failure ultimately

22   leading to the preventable near death experience and apparent suicide attempt on April 16, 2019.

**Return to Sutter County Where Linda Miller is Subjected to**

**Constitutionally Inadequate Medical Care**

25   111.   On April 16, 2019, LINDA MILLER was cleared for entry to Sutter County Jail and was

26   placed in a cell in General Population. Defendants completed the placement and booking of LINDA

27   MILLER in the Sutter County Jail knowing that it could not, and would not, provide anything resembling

28   the level of evaluation, treatment and supervision that LINDA MILLER required given her gravely

THIRD AMENDED COMPLAINT        -27-
FOR DAMAGES

disabled physical health, mental health condition, and her recent opiate withdrawal crisis. Upon LINDA MILLER's transfer back to Sutter County Jail, Defendant Doe 2 (whose identity is not yet ascertained) informed Defendant MOSELEY that LINDA MILLER had attempted suicide while in the custody of Nevada County. Even though MOSELEY knew that LINDA MILLER was suicidal and had just attempted suicide less than 24 hours before she was returned to the custody of Sutter County, neither MOSELEY nor other Sutter County Defendants made attempts to place LINDA MILLER under heightened observation. Neither MOSELEY nor other Sutter County Defendants housed LINDA MILLER in an area of the jail where she could receive more frequent safety checks in light of her risk of suicide. Neither MOSELEY nor other Sutter County Defendants provided LINDA MILLER an immediate mental health evaluation. Neither MOSELEY nor other Sutter County Defendants referred LINDA MILLER for immediate medical or psychiatric care.

112.   On April 16, 2019, the medical staff at Sutter County Jail conducted a medical intake (their second medical intake of LINDA MILLER in less than 24 hours). LINDA MILLER was in so much pain and distress that she could not sit up during the intake. In fact, the nurse checks the box "patient unable to sign," and added a note "laid on the floor." In addition to Dilaudid, LINDA MILLER indicated to the nurse that she had been taking Prozac, an anti-depressant, daily. Despite the visible agony that LINDA MILLER was in, the extent of her injuries and the numerous hospital visits stating otherwise, the nurse implausibly indicated that LINDA MILLER was experiencing no pain and that on a pain scale of 1-10, Miller reported feeling a 0. Despite the mounting evidence of medical concern, the nurse and other medical staff knowingly and negligently risked LINDA MILLER's life by releasing her to a cell in General Population when she should have been placed on suicide watch, or at minimum, medical housing or an observation cell where frequent and recurring safety checks can be conducted by a medical professional.

113.   Later, on April 16, 2019, at 2:30 pm, LINDA MILLER sought a healthcare visit with a nurse through a medical sick call. Jail records show that she was agitated, lying down on the floor, kicking her legs, and recalled waking up "sick as a dog" at the hospital with no memory of the events leading up to that. She stated to the nurse that after the motor vehicle accident, she became addicted to pain medication, had been purchasing Dilaudid pills and heroin on the street, which she used daily

immediately prior to being incarcerated. She indicated she was in chronic pain, had endured numerous surgeries, and suffered from a seizure disorder.

114.    Two days later, LINDA MILLER had a "mental health sick call" which was the first and only mental health evaluation that LINDA MILLER had at Sutter County Jail. DEFENDANT BRENDA FRANKS, a Licensed Marriage and Family Therapist, evaluated LINDA MILLER. Her documented findings indicated that:

> "Pt reports she was taken Prozac for depression. She reports now she can't eat or sleep. Pt is being charged with murder as this is her second DUI, this one killing two people and the first one she went to prison for some unknown reason….Pt has been on several psych medications in the past, most recently Prozac by her PMD in Jan of this year."

115.    DEFENDANT FRANKS went on to conduct a mental health assessment and appraisal of LINDA MILLER. She documented the following:

- MILLER had been hospitalized for psychiatric treatment at least twice in the past, and the last time was in 2006 for a "few days."

- MILLER had previously been diagnosed with depression and bipolar disorder, and that she had taken psychiatric drugs as recently as January 2019, including Prozac, Lithium, Geodon and Seroquel. MILLER "reports the Geodon and Seroquel used to help her stabilize her moods so she could eat and sleep."

- MILLER "hasn't slept since she got here so starting to hallucinate."

- MILLER reported physical, psychological/emotional, and sexual abuse.

- MILLER "reports her DUIs are all from pain medications. She reports this DUI is from her husband's medication that was in his car. She reports that she was not under the influence when she got into this wreck, last August."

- MILLER had a history of seizures and reported that her last seizure was one week prior. She had previously received treatment for her seizures.

- MILLER "was on suicide watch in previous incarcerations 'because [she] quit taking [her] psych meds.'"

- MILLER had "two previous suicide attempts."

- MILLER's "dad tried to commit suicide multiple times."

THIRD AMENDED COMPLAINT
FOR DAMAGES
                    -29-

- MILLER experienced a recent devastating "rejection or loss" in her criminal court case, stating "I can't believe it."

- MILLER reported being worried about a major problem and "hallucinating because I can't sleep or eat."

- MILLER expressed feelings of helplessness/hopelessness.

- MILLER expressed feelings of guilt/worthlessness "because [she] was trying to help someone, [she] wasn't trying to hurt anyone."

- MILLER showed signs of depression.

116.    Defendant FRANKS noted that LINDA MILLER's appearance was "disheveled," that her mood was "depressed," and that her affect was "blunted." By the form's own guidelines, LINDA MILLER presented ample signs of an urgent need for mental health intervention. For example, there is a statement at the end of the documentation of this visit which indicates that if the patient said "yes to any one of the following suicide screening questions: 13, 14, 16, 17, place on suicide watch and refer to mental health as urgent." Although LINDA MILLER answered yes to questions 14 and 16, and provided other information indicating that she was suicidal and needed protection and care, she was not placed on suicide watch or referred to mental health as urgent.

117.    Although LINDA MILLER showed overwhelming symptoms of depression and suicidal ideation, and although there was strong evidence of LINDA MILLER's opioid/opiate withdrawal which is widely known to elevate one's suicide risk, Defendant FRANKS failed to place LINDA MILLER on suicide watch and instead sent her back to General Population. From the jail records, it appears that LINDA MILLER was never placed in Mental Health Housing or Special Population Housing following this alarming mental health evaluation.

118.    On April 19, 2019, LINDA MILLER made an appearance in court. What she thought would be a bail reduction hearing ended horribly for LINDA MILLER. Her attorney's request that she be released on her own recognizance or to have her bail reduced to $250,000 (so her family could bail her out) was denied. At the hearing, the judge increased her bail to $2,000,000. LINDA MILLER's attorney informed the judge that her family would not be able to afford private counsel. Any hope that LINDA MILLER and her family had of her release was extinguished at this hearing.

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -30-

119.    COUNTY OF SUTTER knew or should have known that this hearing would be devastating to LINDA MILLER and would heighten her suicide risk. Despite this knowledge, they did not request a mental health evaluation of LINDA MILLER or place her on suicide watch when she returned to the jail.

120.    The next morning, on April 20, 2019, LINDA MILLER was found dead in her cell "facing forward with a brown sheet knotted around her neck and knotted the metal railing of a bed." She was pale and unresponsive. Records from the Sutter County Jail show that the "Skin ashen and dry. Torso warm to touch but extremities slightly cold," which indicates that she had been dead for some time. Defendants COOPER and MOSELEY were correctional officers responsible for conducting regular safety checks to ascertain LINDA MILLER's safety. MOSELEY performed multiple inadequate safety checks the morning of April 20, 2019. At 8:53 AM, MOSELEY's safety check was not completed properly. At 9:11 AM (just six minutes before LINDA MILLER was discovered hanging in her cell), MOSELEY signed the Sutter County Jail Activity Log stating that she had completed a safety check when in fact she had not observed LINDA MILLER.  MOSELEY's last appropriate safety check was performed was one hour and 19 minutes before LINDA MILLER was found hanging in her cell, which is 19 minutes later than the hourly safety checks that are required by SCSO and Title 15, and more than one hour later than recommended safety checks for prisoners in high observation housing (e.g., suicidal prisoners). Their inaction constitutes a failure to abide by those responsibilities and violates the standard of care required by LINDA MILLER.

121.    At the time of her suicide, LINDA MILLER was housed in general population. The cell included a bunk bed with an upper frame and metal railing, which are suicide hazards in cells used for prisoners in mental health crisis. Defendants knowingly and recklessly placed LINDA MILLER in a cell containing fixtures that are widely known to be dangerous for individuals who are suicidal, which LINDA MILLER exhibited signs of during her one and only mental health evaluation at Sutter County Jail. Indeed, LINDA MILLER tied the sheet, with which she used to hang herself, to the metal railing from the upper frame of the bunk bed.

122.    Defendants' failure to appropriately staff its jail facility and monitor LINDA MILLER despite known and foreseeable suicide risks resulted in LINDA MILLER hanging herself.

THIRD AMENDED COMPLAINT
FOR DAMAGES

123.    On April 20, 2019, at 9:42 a.m., LINDA MILLER was declared dead. A subsequent County of Sacramento postmortem examination conducted on April 23, 2019, concluded that she died from asphyxia from hanging by ligature.

124.    According to Form CJ-9, Mortality in Correctional Institutions 2019, completed by Defendant DAN BUTTLER, Division Commander of the Sutter County Sheriff's Office, LINDA MILLER never "stayed overnight in a mental health observation unit or an outside mental health facility" and died in a "general housing unit within the jail facility or in a general housing unit on jail grounds," despite LINDA MILLER'S documented mental health issues warranting a transfer from general population into suicide watch, medical housing or mental health housing.

**Longstanding and Systemic Deficiencies in Sutter County Jail's Provision of Treatment to Prisoners, Suicide Prevention Measures, and Other Relevant Matters**

125.    Defendant COUNTY OF SUTTER has knowingly maintained and tolerated longstanding and systemic deficiencies in the Sutter County Jail's provision of emergency treatment to seriously ill prisoners. It has also knowingly had inadequate medical and mental health staffing as well as policies and procedures that were likely in violation of an existing court order directing minimum standards of medical treatment at the jail. Defendants BARNES, BUTTLER, BIDWELL, and GARZA were aware of and tolerated these serious deficiencies in Sutter County Jail's medical care system, policies, and procedures.

126.    Sutter County Jail has recently experienced several likely preventable prisoner deaths in custody.  In 2010, Rodney Bock, a mentally ill man, committed suicide by hanging himself while in Sutter County Jail while awaiting transfer to Napa State Hospital. Jail staff failed to follow suicide prevention protocols despite the fact that Bock had been "banging himself against his cell door, yelling at or about people who did not exist, and describing various hallucinations." In 2011, Sutter County Jail prisoner Nathan Prasad, who was 30 and had a history of medical troubles, mental illness and drug abuse, died at Rideout Memorial Hospital the same day he was brought from the jail, after receiving poor medical care in the jail. In 2011, prisoner Erica Ness died after the Jail disregarded signs of intoxication. In 2013, another prisoner, Nelson Figeoura, was not placed on a suicide watch despite his known history of mental illness and suicidal tendencies. At a court hearing, he became distraught, believing he had

THIRD AMENDED COMPLAINT FOR DAMAGES

-32-

already been convicted and sentenced. He thereafter committed suicide. Like LINDA MILLER, these prisoners died as a result of deliberate indifference to serious medical needs at Sutter County Jail. This pattern of tragic deaths supports an inference that COUNTY OF SUTTER Defendants are promoting and maintaining a culture of deliberate indifference to human life at the Jail.

127.    In 2014, as a result of lawsuit filed against Sutter County by the family of Rodney Bock, and acknowledging the pattern of likely preventable suicides, a federal judge ordered the County of Sutter to give serious consideration to a number of expert recommendations set forth by plaintiff's counsel to improve the treatment of prisoners with serious mental illness and medical conditions at the jail going forward.

128.    Counsel for Sutter County agreed to give the recommendations serious consideration. Chief among these recommendations were (1) update jail intake procedures to identify prisoners with serious psychiatric or medical conditions, (2) provide 24/7 medical coverage at Sutter County Jail to ensure timely access to medical care, (3) increased licensed mental health staffing at Sutter County Jail to ensure timely access to mental health care, (4) ensure prisoner treatment planning and adequate communication between Sutter County Jail custody staff, medical staff, and mental health providers, (5) transfer Sutter County Jail prisoners with serious mental illness to a hospital setting, (6) do not place prisoners with mental illness in the jail's solitary confinement cells, (7) provide suicide prevention training for both custody and non-custody staff, (8) implement a method for prisoners' family members to convey concerns about their loved ones, (9) improve communication between Sutter-Yuba Mental Health Services and Sutter County Jail, (10) fix the Jail's broken death review process, and (11) ensure meaningful training and accountability to maintain a competent, qualified and effective staff.

129.    LINDA MILLER's death supports an inference that the COUNTY OF SUTTER has failed to implement these recommendations in a meaningful manner to improve the treatment of prisoners with serious mental illness and medical conditions at the Sutter County Jail.

130.    Sutter County's known deficiencies date as far back as 2010. As identified by a Sutter County Grand Jury in its 2010-2011 Final Report, Sutter County Jail has several known deficiencies in its system of providing mental health and medical treatment to prisoners. Identified deficiencies included inadequate medical staffing, lack of required training on suicide prevention and other medical treatment,

non-compliant medical policies and procedures, and a medical program that was long out-of-compliance. The Grand Jury noted that such deficiencies were "unacceptable," and may have caused Sutter County to be out of compliance with an existing court order in *Haller v. Sutter County*, Case No. CIV-S-93-1256, which mandates certain jail conditions affecting the treatment of prisoners.

131.   The Grand Jury found that medical staffing at Sutter County Jail has been inadequate, and that the hiring of additional staff is required.

132.   The Grand Jury noted a report that training of staff nurses had not occurred in more than five (5) years as of 2011, and that such training was necessary to maintain proficiency in emergency response procedures. The Grand Jury found that Sutter County Jail had failed to offer medical staff required training pursuant to court order and the jail's own Medical Policies and Procedures.

133.   The Grand Jury found that Sutter County Jail's health care policies and procedures were significantly out of date, and that the situation had been allowed to "deteriorate."

134.   The Grand Jury found that Sutter County Jail's nursing program was "completely out of compliance with annual nurse training updates and standard nursing procedures," and found "unacceptable that the program is out of compliance, lack of training for the nursing staff, [and] not having the [policies and procedures] up-to-date," among other problems.

135.   The systemic deficiencies regarding the provision of emergency and other medical treatment at Sutter County Jail, as well as the inadequate staffing, policies, and procedures, as identified in the Grand Jury Report, directly caused the woefully inadequate emergency medical attention and treatment that LINDA MILLER required, leading to her untimely and preventable death on April 20, 2019.

136.   Defendants maintained insufficient policies and procedures, and provided inadequate staff training or no training at all, on the provision of emergency medical care to Sutter County Jail prisoners with a serious and/or life-threatening medical condition. These deficiencies include, but are not limited to, insufficient direction as to what circumstances require emergency medical care and the procedure for summoning emergency medical care. These failures directly caused the denial of emergency medical attention and treatment that LINDA MILLER required, leading to her untimely and preventable death on April 20, 2019.

THIRD AMENDED COMPLAINT
FOR DAMAGES
-34-

137.    H.I.G. and CFMG/WELLPATH have unity of ownership and unity of interests and/or CFMG/WELLPATH and their employees/agents are agents of H.I.G. Given their very lucrative financial interests, H.I.G.[10] controls and manages CFMG: it placed at least two tenured H.I.G. Managing Directors and a Principal in- house at CFMG to manage, supervise, direct and lead CFMG. H.I.G. knew or should have known at the time it acquired CFMG that the medical and mental health care provided by CFMG at Sutter County and Nevada County jails was inadequate, incompetent and understaffed and that such conditions, customs, practices had previously led to constitutional violations of detainees and prisoners, caused serious bodily harm and/or death of prisoners/detainees, and that unless abated and remedied, it was foreseeable that such harm and/or death would continue to re-occur. H.I.G., CFMG/WELLPATH defendants and Does 1-20 acted with deliberate indifference to LINDA MILLER's medical needs; they maintained incompetent staff, were understaffed, and allowed non-physician staff to make medical decisions and issue medical orders.

**Pattern of Neglect in Nevada County Jail's Provision of Medical Treatment to Prisoners, Suicide Prevention Measures, and Other Relevant Matters**

138.    Like LINDA MILLER, prisoners at the Wayne Brown Correctional Facility have suffered painful drug withdrawal episodes or have died as a result of COUNTY OF NEVADA Defendants' deliberate indifference to serious medical needs and drug-related crises.

139.    Defendant CFMG/WELLPATH provides insufficient mental health and detoxification services, two of the most persistent needs in jails. Grand juries in Sonoma, Ventura and Santa Cruz counties have criticized CFMG/WELLPATH for how it handles prisoner detoxification. In a 2008 report titled "Death by Incarceration," a Sonoma County grand jury found indications that "drug and alcohol withdrawal played key roles in three deaths and the company's procedures failed to detect people at risk for alcohol withdrawal. For instance, Krista DeLuca tragically died choking on her own vomit due to heroin withdrawal in a CFMG jail in 2016. In a 10-year period ending in May 2014, 92 people died of suicide or a drug overdose while in the custody of a jail served by CFMG, according to a Sacramento Bee analysis of a state Department of Justice database.

---

[10] One of Nashville's largest private companies merges with California firm, changes name. https://www.bizjournals.com/nashville/news/2018/11/07/one-of-nashvilles-largest-private-companies-merges.html.

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -35-

140.     COUNTY OF NEVADA knew or should have known of CFMG/WELLPATH's dismal record in managing the risk of drug and alcohol withdrawal in their jail and detention facilities. Indeed, in May 2016, an individual named Joshua Hightower died of a heroin overdose at Wayne Brown Correctional Facility after another inmate smuggled the drug into the jail. The authorities failed to provide medical assistance once Mr. Hightower was found face down in apparent distress. The family of Mr. Hightower brought litigation against the COUNTY OF NEVADA for his death.

141.     COUNTY OF NEVADA also has a history of failing to summon medical care for prisoners who have an obvious immediate medical need. Christopher Joshua Howie was taken to the Wayne County Correctional Facility and while Mr. Howie was handcuffed and complying with officers' orders, one officer pushed Mr. Howie's head into a wall twice and broke Mr. Howie's leg. Despite repeatedly asking for medical attention, Mr. Howie says he was placed in a cell, left overnight in unrelenting pain. His lawsuit alleges that he was seen by jail staffers several times after his leg was broken, with one CFMG/WELLPATH nurse making notations on jail records an hour and 40 minutes after his injury that he was "awake and alert," "appears well" and that his gait was "steady." In reality, Howie claims, he was in pain, his leg was swelling and he could not walk.[11]

142.     Another detainee, Sonya Cavender, nearly died of pulmonary edema and congestive heart failure at the Wayne Brown Correctional Facility in June 2018 as a result of the County of Nevada's failure to provide timely and effective medical care. She reported her symptoms of severe disorientation, trouble swallowing, right side of her body was numb, sweaty and then hot & cold, a "pins and needle" type pain over much of her body, and a "shooting" pain in her right eye.  The COUNTY OF NEVADA deputies and staff were indifferent and dismissive to her cries for medical attention, failing to call an ambulance for hours and causing her condition to exacerbate such that when she was finally taken to Sierra Nevada Memorial Hospital, the doctors were unable to treat and/or stabilize her condition.[12]

143.     Despite this alarming pattern, from Jan. 1, 2016 to October 30, 2020, COUNTY OF NEVADA contracted with Defendant CFMG/WELLPATH not once, not twice, but *five* different times to

---

[11] *Howie v. Nevada County, et al.*, Complaint, Case 2:18-cv-03146-JAM-KJN (Dkt. No. 1) (E.D. Cal. Nov. 30, 2018).
[12] *Howie v. Nevada County, et al.*, Exhibits to Complaint, Case 2:18-cv-03146-JAM-KJN (Dkt. No. 1-1) (E.D. Cal. Nov. 30, 2018), at pp. 45-52 (Exhibit 5: Cavender Tort Claim).

THIRD AMENDED COMPLAINT             -36-
FOR DAMAGES

provide medical services to Wayne Brown Correctional Facility. The COUNTY approved an approximately $3 million contract with California Forensic Medical Group, Inc. (CFMG) to provide medical, mental health and dental services to the adult and juvenile correctional facilities in Nevada County, on January 1, 2016. On November 7, 2017, the COUNTY OF NEVADA approved an amendment of the contract to address compensation for services that are covered by the Medi-Cal County Inmate Program. The COUNTY OF NEVADA extended the contract for an additional year, which expired on June 30, 2020. This contract was extended by the COUNTY OF NEVADA for 3 additional months from June 30, 2020 to September 30, 2020. Finally, the COUNTY OF NEVADA again extended the contract for 3 months from October 1, 2020 to December 31, 2020.

144.    Sheriff MOON, who knew or should have known that CFMG/WELLPATH had this abysmal track record in the COUNTY OF NEVADA jail and who knew or should have known that CFMG/WELLPATH was failing to adequately treat prisoners in other county jails, endorsed the contract with CFMG/WELLPATH, encouraging the COUNTY OF NEVADA Board of Supervisors to continue to allow CFMG/WELLPATH to inadequately treat prisoners like LINDA MILLER in the COUNTY OF NEVADA Jail. Moreover, Sheriff Moon, who knew or should have known that her jail staff was routinely derelict in failing to timely summon critical life-saving medical care for ill prisoners, abdicated her duty to supervise, monitor and train her staff, thus leading to the constitutional deprivations experienced by prisoners like LINDA MILLER.

145.    In contracting with CFMG/WELLPATH five times since January 1, 2016, despite knowing about the failure to summon medical care and the ensuing litigation, COUNTY OF NEVADA was on notice of CFMG/WELLPATH's inadequate staffing and the deficiency of their policies based on the prior years' needs assessments and previous litigation relating to those policies. COUNTY OF NEVADA was also well aware of CFMG's policies relating to the lack of mental health assessments and lack of drug addiction or drug withdrawal assessments, and the potential negative consequences of these policies. COUNTY OF NEVADA is deliberately indifferent to the treatment of prisoners suffering from serious medical and mental health conditions, including opiate related medical crises, at the Wayne Brown Correctional Facility.

/ / /

THIRD AMENDED COMPLAINT
FOR DAMAGES

-37-

**H.I.G., CFMG/CMGC, and WELLPATH's Custom, Pattern and Practice of Failing to Provide Constitutionally Required Mental Health Treatment and Security Is Widespread and Ongoing**

146.    H.I.G./CFMG and their employees, supervisors, directors, managers, including Dr. FITHIAN, have a unity of ownership and unity of purpose and interest that extends to all CFMG providers of health care in all county jails where CFMG does business. A bird's eye view of other California counties is demonstrative of their unconstitutional practices, customs and policies in COUNTY OF SUTTER and COUNTY OF NEVADA.

147.    In a 2002 lawsuit over constitutional violations resulting in the suicide of a young man in Yolo County jail, Dr. FITHIAN conceded in deposition that he had written a letter to one of his Yolo County employees expressing concern that prisoners were making "too many emergency room visits, hospitalizations and orthopedic visits." This confirms that profit motive prevails over patient indicated hospital care. The case settled for more than $800,000.[13]

148.    In a lawsuit arising from the 2010 suicide death of Jimmy Ray Hatfield, a 38-year old mentally ill man in Lake County jail in California, it was discovered that a CFMG nurse received paperwork from the hospital detailing his psychotic state but she said that she did not review it because that was the job of another nurse who was not scheduled to work for another day and a half. Following a settlement of the case, in an investigative report it was alleged that CFMG has faced allegations that it failed to provide proper care in dozens of U.S. District court cases over the last decade.[14]

149.    According to state Department of Justice's records, 72 people committed suicide in the last decade while in a jail served by CFMG. In recent years, the company's suicide prevention efforts have been challenged in the federal lawsuits in Monterey County, Lake County, and Ventura County. In his examination of the Monterey County jail, plaintiff's expert Dr. Pablo Stewart, reviewed three suicides since 2010. "In each case, problems with the jail's mental health and suicide prevention programs appear to have contributed to the suicides," he wrote. He pointed to prisoners who were not given medicine or psychiatric consultation prior to their deaths.[15]

---

[13] Brad Branan, "California for-profit company faces allegations of inadequate inmate care", January 17, 2015, SACRAMENTO BEE, at p. 3. *available at* www.sacbee.com/news/investigations/the-public-eye/article7249637.html.
[14] *Id.* at p. 1.
[15] *Id.* at p. 4.

150.     In a 10-year period ending May 2014, ninety-two people died of suicide or a drug overdose while under the care of CFMG, according to a Sacramento Bee analysis of a state Department of Justice database. CFMG's population-adjusted rate for such deaths is about 50 percent higher than in other county jails. Most of the people who died in such cases were not yet convicted of a crime, according to the state database, as is the case for most jail fatalities.[16]

151.     In 2013-2014, Santa Cruz County Grand Jury addressed a multitude of deaths in the jail where CFMG provided services.[17] The investigation reviewed five in-custody deaths between August 2012 and July 2013 at the County Main Jail. Four of these deaths occurred after CFMG had assumed medical responsibility for the jail. All of the individuals who died in custody had medical problems or mental health problems or both. "In this high pressure environment, the process for classifying, monitoring, and treating high risk individuals needs to be carefully formulated and executed" the report concluded. In all of the in-custody death cases, the report identified failures at critical points in the process, sometimes finding that individuals were incorrectly classified, not properly monitored, or inadequate treatments were applied.[18] Of the four deaths, two were suicides by hanging.

152.     To put the deaths in perspective, the report noted that "a total of 885 jail deaths occurred nationally in 2011. The vast majority of jails reported 0 deaths, 13% reported a single death, 6% reported 2 or more deaths, and Santa Cruz County recorded 5 deaths during an 11 month period spanning 2012 – 2013."[19] The lengthy report makes multiple findings and recommendations, many of which found failures of CFMG procedures, personnel failures, insufficient oversight, treatment and policies.[20]

153.     Similarly in 2013, prisoners in Monterey County Jail filed a class action against the County and CFMG alleging unconstitutional conditions of confinement. The Court granted a preliminary injunction.[21] Four stipulated experts found inadequate policies and practices for continuing prescription medications, substandard policies and practices of identifying and treating newly booked prisoners for

---

[16] *Id.* at p. 2.
[17] 2013 – 2014 Five Deaths in Custody -- An Investigation of In-Custody Deaths, Santa Cruz County Grand Jury May, 2014, *available at* https://www.co.santa-cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf.
[18] *Id.* at 2.
[19] *Id.* at 3-4.
[20] *Id.* at 15-18.
[21] *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. Apr. 14, 2015).

THIRD AMENDED COMPLAINT
FOR DAMAGES                                          -39-

drug and alcohol withdrawal, administrative segregation units that put prisoners at an unacceptable risk of suicide.[22]

154.    The court noted that since 1984, CFMG had contracted to "follow all County policies and work with County to implement additional policies governing such matters as healthcare staffing, access to prescriptions, emergency care and mental health services. The neutral expert that was appointed to evaluate the adequacy of the medical care found that "the jail's medical staffing is 40 – 70% less than it should be at all levels, leading to inadequate intake, evaluation, management and surveillance."[23] "Almost every important policy governing medical care suffered from serious infirmities: intake, requests for emergency services, continuing medications, scheduling care, segregation and special needs."[24] "The system-wide policies and practices for providing mental health care place prisoners at a risk of serious harm."[25]

155.    In April 2015, the *Hernandez* court found CFMG and the County's policies and practices relating to suicide and self-harm prevention constituted "deliberate indifference to plaintiff's serious medical needs, particularly for the mentally ill. Since 2010 … the jail had a suicide rate that is nearly twice the national average for jail populations in 2011."[26] "Defendants fail to engage in practices— conducting pre-segregation screening, providing adequate structured and unstructured out of cell time, utilizing a suicide risk assessment tool—known to reduce the risk of created by administrative segregation."

156.    In May 2015, *Hernandez v. County of Monterey* settled with the term that CFMG employ a full-time psychiatrist and have another on-call at all times.[27] Three years later, on April 2, 2018, CFMG admitted that it only had recently hired an on-site mental health professional due to difficulty in filling the position. The District Court judge stated "[m]aybe you need to offer a better salary." CFMG suggested rather than having a full-time psychiatrist, they be allowed to use "telepsychiatry" – essentially

---

[22] *Id*. at 933.
[23] *Id*. at 937.
[24] *Id*. at 937-938.
[25] *Id*. at 938.
[26] *Id*. at 946.
[27] Derek Gilna, "Despite class- action settlement, mental health problems at CA Jail persist", April 2, 2018, Prison Legal News, p.1, *available at* https://www.Prisonlegalnews.org/news/2018/apr/2/despite-class-actionsettlement-mental-healthcare-problems-ca-jail-persist/.

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -40-

conducted mental health screenings by video rather than in person. The court stated: "just to allow tele-psychiatry any time, I'm not in favor of that."[28]

157.     While the *Hernandez* case was ongoing, on April 2016, CFMG and Monterey paid $1.1 million to settle another similar suicide case (Joshua Claypole);[29] and on Sept. 13, 2017, another factually similar suicide case was filed against CFMG,[30] which was later settled for $1.6 million.

158.     In June 18, 2018, CFMG and Lake County paid $2 million to settle a federal civil rights lawsuit involving another suicide of an 86 year old woman.[31] The case revealed "its jail's medical services provider was in violation of state regulations."[32] CFMG was using "lesser trained vocational nurses to make key medical and mental health decisions for prisoners."[33] The correctional officers were faulted for not doing proper cell checks at the time plaintiff's suicide was occurring.[34] This was the third lawsuit against CFMG and Lake County involving a jail suicide.

159.     In August 31, 2018, the suicide death of Lawrence "Jake" Spies Jr. in the El Dorado County jail resulted in CFMG agreeing to pay $1 million.[35] The suit alleged that the prisoner's death was preventable.

160.     In September 7, 2018, Larra Gillis died in the hospital after spending about 28 hours at the Monterey County jail. She was placed in a cell and the initial claimed medical assessment lasted only 12 seconds and consisted of a nurse looking through a window into the safety cell. The Complaint alleged she was detained 28 hours "with no food and received only one cup of water."[36] "She was found nearly

---

[28] *Id.* at 2.
[29] *Id.* at 1.
[30] *De Anda, et al. v Herr, Taylor Fithian, Kip Hallman, et al.* Case No. 5:17-cv05320-SVK (9/13/2017).
[31] Julie Johnson, "Lake County settles jail suicide case for 2 million", June 18, 2018, THE PRESS DEMOCRAT, *available at* https://www.pressdemocrat.com/news/8446145- 181/lake-county-settles-jail-suicide?sba=AAS.
[32] *Id.*
[33] *Id.*
[34] Elizabeth Larson, "County reaches $2 million settlement in federal lawsuit over 2015 jail suicide", June 15, 2018, LAKE COUNTY NEWS, *available at* http://www.lakeconews.com/index.php/news/56429-county-reaches-2-millionsettlement-in-federal-lawsuit-over-2015-jail-suicide.
[35] Mountain Democrat staff writers, "Spies family awarded more than 1 million for wrongful death", August 31, 2018, MOUNTAIN DEMOCRAT NEWS *available at* https://www.mtdemocrat.com/news/spies-family-awarded-more-than-1- million-for-wrongful-death/.
[36] Tom Wright, "Monterey County Jail medical services provider to pay $825,000 in wrongful death of inmate", September 18, 2018, MONTEREY HERALD, *available at* https://www.montereyherald.com/2018/09/18/monterey-county-jail-medicalservice-provider-to-pay-825k-in-wrongful-death-of-inmate/.

THIRD AMENDED COMPLAINT
FOR DAMAGES                    -41-

unconscious and covered in feces…and taken to the hospital suffering from sepsis, severe dehydration and kidney failure and never regained consciousness before her death 2 weeks later."[37] The County and CFMG settled for $825,000.[38]

161.  On January 5, 2019, as alleged above, COUNTY and H.I.G., CFMG now known as WELLPATH Defendants and DOES 1-20 failed to properly train, assign, supervise, and guide their staff and medical personnel assigned to the Sutter County Jail and the Nevada County jail to take immediate measures to ensure sufficient and competent medical staffing that a suicidal detainee, like LINDA MILLER be referred to a hospital or psychiatric facility for care and treatment if they were not able to provide him such higher level of mental health care.

**LINDA MILLER's Family Has Suffered Serious and Permanent Injury as a Result of Defendants' Deliberate Indifference and Other Misconduct**

162.  As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs CHRISTINA HYDE and H.S. suffered the following injuries and damages:

    a.    Violation of their due process rights under the First and Fourteenth Amendments to the United Stated Constitution;

    b.    Conscious, needless physical pain and suffering, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness, trauma, suffering, and the loss of the services, society, care, and protection of the decedent;

    c.    Loss of financial support and contributions, loss of the present value of future services and contributions, and loss of economic security;

    d.    Emotional trauma and suffering, including fear, extreme emotional distress, and horror;

    e.    Loss of the companionship of their father/son; and

    f.    Attorney's fees and costs.

/ / /

/ / /

---

[37] *Id.*
[38] *Id.*

THIRD AMENDED COMPLAINT FOR DAMAGES

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Deliberate Indifference to Serious Medical and Mental Health Needs in Violation of the Fourteenth Amendment to the Constitution of the United States**

**(Survival Action – 42 U.S.C. § 1983)**

**(Against BARNES, BUTTLER, BIDWELL, FIFTHIAN, HALLMAN, GARZA, COOPER, FRANKS, MULLENAX, MOSELEY, and DOES 2-20.)**

163.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

164.    Defendants have inadequate policies, procedures, and practices for identifying prisoners in need of medical and mental health treatment and providing appropriate medical and mental health treatment. Defendants also fail to appropriately train and supervise staff regarding the provision of treatment to prisoners with medical and mental health issues.

165.    Defendants have consistently failed to meet their constitutional obligation to provide adequate mental health care to prisoners in their jails.  The mental health care provided by Defendants to prisoners in their jails is woefully inadequate and falls far short of all of the minimum elements of a constitutional mental health care system.  Defendants' failure to correct their policies, procedures, and practices, despite notice of significant and dangerous problems, evidences deliberate indifference in the provision of mental health treatment.

166.    Defendants knew or should have known that there was a strong likelihood that LINDA MILLER posed a threat to herself or others.

167.    Defendants failed to provide necessary medical and mental health evaluation and treatment to LINDA MILLER while she was held at the Wayne Brown Correctional Facility and Sutter County Jail, despite her history of mental illness, obvious symptoms of mental health crisis, and information that she was under the influence of opioid medication.

168.    The policies, procedures, and protocols which Defendants had in place and which were administered by personnel at the Wayne Brown Correctional Facility and Sutter County Jail related to mental health treatment and suicide prevention were legally and medically insufficient to protect LINDA

MILLER from suicide and harm. For instance,

    a.    Failure to provide LINDA MILLER with appropriate medical or psychiatric care and to identify suicide risk,

    b.    Failing to train, supervise and/or promulgate appropriate policies and procedures in order to identify suicide risk and provide treatment

    c.    Failure to have proper protocols, policies, and procedures in place to minimize and mitigate LINDA MILLER's ability to inflict self-harm.

    d.    Failure to appropriately assess LINDA MILLER's suicidality, risk of harm to himself, and mental illness, and, instead, choosing to ignore her symptoms and refusing to provide her treatment.

169.    These failures constituted objectively unreasonable indifference to the serious medical needs, health and safety. These failures further constituted deliberate indifference to LINDA MILLER's serious medical needs, health and safety. As a direct and proximate result of Defendants' conduct, LINDA MILLER experienced physical pain, severe emotional distress, and mental anguish over a period of five days, as well as loss of his life and other damages alleged herein.

170.    The aforementioned acts of Defendants were conducted with conscious disregard for the safety of Plaintiffs and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**<u>SECOND CLAIM FOR RELIEF</u>**

**Failure to Protect from Harm in Violation of the**

**Fourteenth Amendment to the Constitution of the United States**

**(Survival Action – 42 U.S.C. § 1983)**

**(Against BARNES, BUTTLER, BIDWELL, FIFTHIAN, HALLMAN, GARZA, COOPER,**

**FRANKS, MULLENAX, MOSELEY, and DOES 2-20.)**

171.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

172.    Each Defendant could have taken action to prevent unnecessary harm to LINDA

THIRD AMENDED COMPLAINT
FOR DAMAGES

-44-

1  MILLER, but refused or failed to do so.

2      173.   Defendants failed to have minimally necessary policies and procedures concerning the

3  adequate identification and housing of LINDA MILLER, whom they knew or should have known to be at

4  risk of self-harm.

5      174.   Sutter County Defendants failed to take necessary precautions to ensure that LINDA

6  MILLER would not harm herself or others after she communicated clearly suicidal thoughts to

7  Defendants employed at the Sutter County Jail. They also failed to create minimally necessary policies

8  and procedures for ensuring that other entities and municipalities were informed of suicide risks among

9  prisoners who are transferred from their custody. Lastly, they failed to adequately train and supervise

10  officers to protect prisoners from harm.

11      175.   Nevada County Defendants failed to implement minimally sufficient policies and

12  procedures to protect prisoners from harm. County Defendants failed to appropriately train and supervise

13  staff regarding identification and handling of detainees at risk of harm. With respect to LINDA MILLER,

14  County Defendants failed to follow even their own opioid withdrawal protocols or suicide prevention

15  procedures to identify, house, and monitor detainees at risk of self-harm.

16      176.   Defendants' acts and/or omissions as alleged herein, including but not limited to their

17  failure to take appropriate measures to protect LINDA MILLER from harm, along with the acts and/or

18  omissions of the Defendants in failing to train, supervise and/or promulgate appropriate policies and

19  procedures in order to protect LINDA MILLER from harm, constituted deliberate indifference to LINDA

20  MILLER's serious medical needs, health, and safety.

21      177.   As a direct and proximate result of Defendants' conduct, LINDA MILLER experienced

22  physical pain, severe emotional distress, and mental anguish over a period of five days, as well as loss of

23  her life and other damages alleged herein.

24      178.   The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive,

25  thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful

26  conduct alleged herein and to deter such conduct in the future.

27  / / /

28  / / /

THIRD AMENDED COMPLAINT
FOR DAMAGES                    -45-

**THIRD CLAIM FOR RELIEF**

**Municipal Liability in Violation of the Fourteenth Amendment**

**to the Constitution of the United States**

**(Survival Action- 42 U.S.C. § 1983)**

**(Against COUNTY OF SUTTER, COUNTY OF NEVADA, WELLPATH, H.I.G. Capital LLC, and CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH).)**

179.   Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

180.   The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to LINDA MILLER's serious medical needs, health and safety and violating LINDA MILLER's civil rights were the direct and proximate result of customs, practices and policies of Defendants COUNTY OF SUTTER, COUNTY OF NEVADA, WELLPATH, H.I.G. Capital LLC, and CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH), by and through their agencies, employees and/or agents, as alleged herein.

181.   Such policies, customs and/or practices include but are not limited to:

     a.    To deny prisoners at the COUNTY'S jail access to medical/psychiatric attention, continuity of care and/or access to a higher level of care not available at the jail for seriously ill prisoners;

     b.    To fail to identify whether newly arrived prisoners are suffering from drug withdrawal or will likely suffer from drug withdrawal, failure to monitor prisoners for possible drug withdrawal, failure to provide adequate medical care, supervision or staffing to safely monitor the drug detoxification or withdrawal process, failure to perform adequate cell checks and to record unusual activity or behavior, failure to provide health training on prisoners with alcohol problems.

     c.    To fail to properly classify, house and/or monitor prisoners suffering from mental health disabilities in compliance with statutory mandates;

d.    To fail to provide medical or mental health care for prisoners with serious medical needs;

e.    To fail to maintain appropriate, competent and sufficient indicated medical and mental health staffing;

f.    To fail to use appropriate National and State accepted jail minimum standards, procedures and practices for handling suicidal mentally ill and/or emotionally disturbed persons;

g.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, procedures and practices concerning handling suicidal prisoners at Sutter County Jail and Wayne Brown Correctional Facility;

h.    To fail to comply with their own policies and procedures and/ to fail to supervise to ensure implementation thereof;

i.    To fail to maintain competent and adequate supervision and training of medical and custodial staff regarding mentally ill and suicidal prisoners;

j.    H.I.G., CFMG/WELLPATH placed their financial interests and profits before their duty and responsibility to provide sufficient and competent medical/mental health care staff to patient/prisoners.

182.    Defendants COUNTY OF SUTTER, COUNTY OF NEVADA, WELLPATH, H.I.G. Capital LLC, and CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH) tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of constitutional rights.

183.    The customs, policies and/or practices of Defendants COUNTY OF SUTTER, COUNTY OF NEVADA, WELLPATH, H.I.G. Capital LLC, and CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH) were a direct and proximate cause of Plaintiffs' injuries and the death of the LINDA MILLER in that Defendants failed to adequately train and supervise its employees and/or agents to prevent the occurrence of the constitutional violations suffered by Plaintiffs and LINDA MILLER, and by other prisoners at

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -47-

Wayne Brown Correctional Facility and Sutter County Jail. Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations suffered by Plaintiffs and LINDA MILLER, and by other prisoners at Wayne Brown Correctional Facility and Sutter County Jail.

184.     As a direct and proximate result of the aforementioned customs, policies and/or practices of Defendants, LINDA MILLER and Plaintiffs suffered injuries and damages as alleged herein.

## FOURTH CLAIM FOR RELIEF

### Supervisory Liability

### (Survival Action – 42 U.S.C. § 1983)

### (Against Defendants BARNES, BUTTLER, BIDWELL, FIFTHIAN, and HALLMAN.)

185.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

186.     The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to LINDA MILLER's serious medical needs, health and safety and violating decedent's civil rights were the direct and proximate result of customs, practices and policies of Defendants BARNES, BUTTLER, BIDWELL, MOON, FIFTHIAN, HALLMAN, and DOES 1-20 as alleged herein.

187.     Such policies, customs and/or practices include but are not limited to an ongoing pattern of deliberate indifference, including the following: the failure to ensure implementation of appropriate medical and emergency treatment plans; the failure to act upon clearly life-threatening symptoms and reports; the failure to provide appropriate staffing and training at Sutter County Jail and Nevada County's Wayne Brown Correctional Facility to provide minimally adequate medical treatment for seriously ill prisoners; and the failure to implement a policy to ensure that staff would contact and summon emergency medical treatment in a timely manner.

188.     Defendants BARNES, BUTTLER, BIDWELL, MOON, FIFTHIAN, HALLMAN, and DOES 1-20 tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of constitutional rights.

189.     The customs, policies and/or practices of said Defendants were a direct and proximate cause of Plaintiffs' injuries and the death of the LINDA MILLER in that Defendants failed to adequately

THIRD AMENDED COMPLAINT
FOR DAMAGES                                          -48-

train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations suffered by Plaintiffs and LINDA MILLER, and by other prisoners at Sutter County Jail and Nevada County's Wayne Brown Correctional Facility. Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations suffered by Plaintiffs and LINDA MILLER, and by other prisoners at Sutter County Jail and Nevada County's Wayne Brown Correctional Facility.

190.    Each of the H.I.G., CFMG/WELLPATH supervisors, managers, directors, executives' acts and/or omissions and failure to supervise their subordinates were taken with deliberate indifference to the medical care of prisoners, such as LINDA MILLER, as set forth above.

191.    Each of the H.I.G., CFMG/WELLPATH Defendants and Does 1-20 failed to supervise the medical-mental health services for detainees and knew or should have known Sutter County jail and Wayne Brown Correctional Facility suffered from extreme overcrowding, inadequate and/or incompetent medical staffing, as set forth above, thereby violating the constitutional rights of patient-prisoners' state and federal laws and departmental policy and procedure.

192.    As a direct and proximate result of the aforementioned customs, policies and/or practices of Defendants, LINDA MILLER and Plaintiffs suffered injuries and damages as alleged herein.

193.    The aforementioned acts of Defendants BARNES, BUTTLER, BIDWELL, MOON, FIFTHIAN, HALLMAN, and DOES 1-20 were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## FIFTH CLAIM FOR RELIEF

**Deprivation of Substantive Due Process Rights in Violation of**

**First and Fourteenth Amendments to the Constitution of the United States –**

**Loss of Parent/Child Relationship (42 U.S.C. § 1983)**

**(Against BARNES, BUTTLER, BIDWELL, FIFTHIAN, HALLMAN, GARZA, COOPER, FRANKS, MULLENAX, and MOSELEY.)**

194.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

THIRD AMENDED COMPLAINT
FOR DAMAGES

-49-

195.     The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to LINDA MILLER'S serious medical needs, health and safety, violating LINDA MILLER's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of LINDA MILLER deprived Plaintiff HYDE of her liberty interest in the parent-child relationship and Minor Plaintiff H.S. of his liberty interest in the parent-child relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution.

196.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein.

197.     The aforementioned acts and/or omissions of the individually named Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### SIXTH CLAIM FOR RELIEF

**Failure to Furnish / Summon Medical Care (Survival Action – California State Law, California Government Code §§ 844.6 and 845.6.)**

**(Against Defendants COUNTY OF NEVADA, COUNTY OF SUTTER, COOPER, MOSELEY, and DOES 2-20)**

198.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

199.     Defendants owed LINDA MILLER a duty of care to provide her immediate medical and mental health care.

200.     The conduct of Defendants alleged herein, including but not limited to the facts that Defendants knew or had reason to know that LINDA MILLER was in need of immediate medical and mental health care and that Defendants failed to take reasonable action to summon or provide that care, resulting in LINDA MILLER's death as alleged herein, violated California state law, including Cal. Govt. Code §§ 844.6 and 845.6.

201.     Defendants also failed to timely and appropriately respond to LINDA MILLER's expressions of suicidal ideation, before she hung herself in her cell.

THIRD AMENDED COMPLAINT
FOR DAMAGES

202.    The alleged conduct of Defendants was committed within the course and scope of their employment.

203.    As a direct and proximate result of Defendants' breach, LINDA MILLER, CHRISTINA HYDE, and H.S. suffered injuries and damages causing great pain and leading to her death, as alleged herein.

204.    The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## SEVENTH CLAIM FOR RELIEF

### Negligent Supervision, Training, Hiring, and Retention

### (Survival Action – California State Law, California Government Code §§ 815.2, 820(a), and 820.8)

### (Against Defendants COUNTY OF SUTTER, BARNES, BUTTLER, BIDWELL, HALLMAN, and DOES 2-20)

205.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

206.    Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein.

207.    These general duties of reasonable care and due care owed to Plaintiffs by Defendants and each them including DOES 1-20, include but are not limited to the following specific obligations:

       a.    To properly and reasonably hire, supervise, train, retain, investigate, monitor, evaluate, and discipline each person (i) who was responsible for providing psychiatric/medical care for LINDA MILLER; (ii) who was responsible for the safe and appropriate jail custody of LINDA MILLER; (iii) who was responsible for properly and reasonably classifying, housing, and monitoring LINDA MILLER; (iv) who denied LINDA MILLER medical attention or access to medical care and treatment; and/or (vi) who failed to summon necessary and appropriate medical care;

       b.    To properly and adequately hire, supervise, train, retain, investigate, monitor,

evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

c.    To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs' rights.

d.    To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth herein.

208.    Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

209.    As a direct and proximate result of Defendants' failure, LINDA MILLER and Plaintiffs suffered injuries and damages as alleged herein.

## EIGHTH CLAIM FOR RELIEF

### Wrongful Death – California Code Civ. Proc. § 377.60

### (Against COUNTY OF SUTTER, WELLPATH, H.I.G. Capital LLC, CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH), BARNES, BUTTLER, BIDWELL, FIFTHIAN, HALLMAN, GARZA, COOPER, FRANKS, MULLENAX, MOSELEY, and DOES 2-20.)

210.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

211.    LINDA MILLER's death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants.  Defendants' acts and/or omissions thus were also a direct and proximate cause of Plaintiffs' injuries and damages, as alleged herein.

212.    The Defendants and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY OF SUTTER, COUNTY OF NEVADA, and HIG/CFMG. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are mentally ill or who are undergoing drug withdrawal access to medical and mental health care as stated above and incorporated here.

213.    In addition, the training policies of the COUNTY OF SUTTER, COUNTY OF

THIRD AMENDED COMPLAINT
FOR DAMAGES

NEVADA, and H.I.G./CFMG Defendants were not adequate to train its deputies, agents and employees to handle encounters with individuals in pretrial custody with mental illness or drug-related issues. These defendants and each of them knew that its failure to adequately train its deputies, agents and employees to interact with individuals suffering from mental illness and/or withdrawing from drug addiction made it highly predictable that its deputies, agents and employees would engage in conduct that would deprive persons such as LINDA MILLER, and thus Plaintiffs of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately

214. Defendants FITHIAN, HALLMAN, and final policymakers for H.I.G./CFMG ratified the actions and omissions of their medical and mental health care providers and the other involved agents and employees in that they had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

215. Sheriff MOON, a final policymaker for COUNTY OF NEVADA, ratified the actions and omissions of the deputy Doe Defendants and the other involved officers in that she had knowledge of and made a deliberate choice to approve their unlawful acts and omissions. The COUNTY OF NEVADA Defendants deliberately failed to summon medical care for LINDA MILLER after what appeared to be a suicide attempt. The COUNTY OF NEVADA Defendants also failed to initiate drug detoxification or withdrawal protocols despite LINDA MILLER's revelations that she was addicted to drugs. The COUNTY OF NEVADA Defendants further failed to conduct a mental health evaluation despite LINDA MILLER'S history of mental illness. Rather than arrange for the care she needed while in their custody, the COUNTY OF NEVADA deliberately arranged to rehouse her in a Jail that it knew could not accommodate her, and where they knew she was prone to suffer depression, suicidal thoughts, and suicide. The COUNTY OF NEVADA Defendants' actions and omissions thus were a moving force and proximate cause of LINDA MILLER'S death and Plaintiff's injuries.

216. Sheriff BARNES, a final policymaker for COUNTY OF SUTTER, ratified the actions and omissions of the deputy Doe Defendants and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions. For four days, LINDA MILLER was incarcerated at Sutter County Jail, where she received profoundly

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -53-

inadequate medical and mental health treatment. Despite articulating that she had a previous diagnosis of depression and bipolar; previously attempted suicide twice; had previously taken psychiatric medication Prozac, Lithium, Geodon, and Seroquel; was on suicide watch in previous incarcerations because she had stopped taking her psychotropic medications; had not slept since she got to jail and was starting to hallucinate; felt hopeless; experienced a reject rejection or loss in her court case; and felt presently guilty or worthless, Defendants failed to place LINDA MILLER on suicide watch and failed to monitor her closely. Defendants knowingly and recklessly placed LINDA MILLER in a cell containing fixtures that are widely known to be dangerous for individuals who are suicidal, which LINDA MILLER exhibited signs of during her one and only mental health evaluation at Sutter County Jail. Defendants also failed to conduct regular checks.

217.    Defendants' failure to appropriately staff its jail facility and monitor LINDA MILLER despite known and foreseeable suicide risks resulted in LINDA MILLER hanging herself.

218.    As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs incurred expenses for funeral and burial expenses in an amount to be proved.

219.    As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs suffered the loss of the services, society, care, and protection of the decedent, as well as the loss of the present value of her future services to her mother.  Plaintiffs are further entitled to recover prejudgment interest.

220.    Plaintiff ESTATE OF LINDA MILLER is entitled to recover punitive damages against individual Defendants who, with conscious disregard of LINDA MILLER's rights, failed to provide LINDA MILLER with mental health treatment services meeting the professional standard of practice and failed to adhere to the legal mandates of prisoner supervision.

221.    The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiff of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

/ / /

/ / /

/ / /

THIRD AMENDED COMPLAINT
FOR DAMAGES

**NINTH CLAIM FOR RELIEF**

**Negligence**

**(Survival Actions – California State Law and California Government Code §§ 815.2 and 815.4.)**

**(Against COUNTY OF SUTTER, BARNES, BUTTLER, BIDWELL, FIFTHIAN, HALLMAN, GARZA, COOPER, FRANKS, MOSELEY, and DOES 2-20.)**

222.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

223.    At all times, each individual and corporate Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

224.    At all times, each individual and corporate Defendant owed Plaintiffs the duty to act with reasonable care. These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

    a.    To provide, or have provided sufficient, competent, prompt and appropriate psychiatric/medical care to LINDA MILLER;

    b.    To provide safe and appropriate jail custody for LINDA MILLER including reasonable classification, monitoring, and housing;

    c.    To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill, suicidal and/or emotionally disturbed person;

    d.    To refrain from abusing their authority granted them by law;

    e.    To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

225.    Defendants  and their employees and agents, failed to comply with professional standards in the treatment of LINDA MILLER's mental illness by failing to appropriately assess and evaluate her mental health and suicide risk, failing to take appropriate and timely suicide prevention measures, failing to provide appropriate mental health treatment, and failing to prescribe or provide appropriate and necessary psychiatric medications and ensure compliance with those medications.

226.    These Defendants also failed to appropriately supervise, review, and ensure the

THIRD AMENDED COMPLAINT FOR DAMAGES

-55-

competence of medical staff's and custody staff's provision of treatment to LINDA MILLER, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

227.    Together, these Defendants acted negligently and improperly, breached their respective duties, and as a direct and proximate result, LINDA MILLER and CHRISTINA HYDE suffered injuries and damages as alleged herein.

228.    The negligent conduct of Defendants was committed within the course and scope of their employment.

229.    The aforementioned acts of Defendants were conducted with conscious disregard for the safety of Plaintiffs and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

230.    Defendant COUNTY OF SUTTER are vicariously liable for the negligent actions of its employees pursuant to California Government Code section 815.2 and contractors pursuant to California Government Code section 815.4.

## **TENTH CLAIM FOR RELIEF**

### **Violation of the Bane Act, Civil Code § 52.1 (California State Law)**

**(Against COUNTY OF SUTTER, COUNTY OF NEVADA, WELLPATH, H.I.G. Capital LLC, CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH), BARNES, BUTTLER, BIDWELL, FIFTHIAN, HALLMAN, GARZA, COOPER, FRANKS, MULLENAX, MOSELEY, and DOES 2-20.)**

231.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

232.    By their acts, omissions, customs, and policies, Defendants and DOES 1-20 acting in concert/conspiracy, as described above, and with threat, intimidation, and/or coercion, violated Plaintiffs' and Decedent's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law:

    a.    Decedent's right to be free from an unreasonable ongoing seizure as a pretrial
        detainee, as secured by the Fourth and Fourteenth Amendments to the United

THIRD AMENDED COMPLAINT
FOR DAMAGES                                    -56-

States Constitution and the California Constitution, Article 1, Sections 7 and 13;

b.   Decedent's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

c.   Decedent's rights and liberty interests, as an incapacitated criminal defendant, to freedom from incarceration and to timely, restorative treatment, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

d.   Plaintiffs' right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

e.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

f.   Decedent's right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

g.   Decedent's right to immediate medical care as required by California Government Code § 845.6.

233.   Defendants' violations of Plaintiffs' and Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and Decedent's rights, Defendants violated Plaintiffs' and Decedent's rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion:

a.   Intentionally and with deliberate indifference, depriving and/or preventing LINDA MILLER from receiving necessary, life-saving medical and/or psychiatric care and treatment;

b.   Intentionally and with deliberate indifference, causing LINDA MILLER to

languish in jail without necessary medical/psychiatric/pharmacological care, or even the required treatment plan, when she was obviously unable to care for her own needs;

    c.    Intentionally and with deliberate indifference, causing LINDA MILLER to suffer a life-threatening opioid related medical crisis without properly identifying the symptoms or putting in place withdrawal protocols;

    d.    Intentionally and with deliberate indifference, doing and/or permitting subparagraphs (a) – (c) when it was also obvious that in doing so, Decedent's life was likely to end needlessly, and Plaintiffs' rights also would be violated;

234.    The threat, intimidation, and coercion described herein were not necessary or inherent to any legitimate and lawful law enforcement activity. LINDA MILLER's prolonged incarceration in a highly dangerous jail setting where she was not provided adequate medical care or psychiatric treatment, and where she depended solely on Defendants for her housing, safety, and timely treatment, constitutes a situation of threat, intimidation, and coercion.

235.    Further, all of Defendants' violations of duties and rights, and coercive conduct described herein, were volitional acts; none was accidental or merely negligent. Further, each Defendant violated Plaintiffs' and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

236.    To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were done to Plaintiffs, it is asserted as a personal claim. To the extent the violations were done to both Decedent and Plaintiffs, it is asserted as both.

237.    Defendant COUNTY OF SUTTER,  COUNTY OF NEVADA, WELLPATH, H.I.G. Capital LLC, and CALIFORNIA FORENSIC MEDICAL GROUP (AKA CORRECTIONAL MEDICAL GROUP COMPANIES, Inc. and AKA WELLPATH) are vicariously liable pursuant to Cal. Gov. Code § 815.2 and § 815.4.

238.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law,

Plaintiffs sustained injuries and damages, and against each Defendant named in this Count is entitled to relief as set forth above, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

### Violation of ADA (Title II) and the Rehabilitation Act

### (Against Defendant COUNTY OF SUTTER.)

239.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

240.    LINDA MILLER was a "qualified individual," with a mental illness and disability and impairments that limited and/or substantially limited his ability to care for herself and control her mental, medical or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k), and Cal. Civ. Code §§ 51 et seq., 52, 54, 54.1, Cal. Gov't Code § 12926, and qualified as an individual with a mental disability under California law, and she met the essential eligibility requirements of COUNTY OF SUTTER and COUNTY OF NEVADA programs to provide access to mental health care services for its detainee/prisoners patients in County's jails while they are in custody.

241.    Defendants COUNTY OF SUTTER's and COUNTY OF NEVADA's jail and mental health services are places of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. § 12181(7) (F) and  the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws.

242.    Defendants COUNTY OF SUTTER's and COUNTY OF NEVADA's jail and County mental health services contracted for between COUNTY and WELLPATH, H.I.G. CAPITAL, LLC, CALIFORNIA FORENSIC MEDICAL GROUP (AKA Correctional Medical Group Companies, Inc. and AKA WELLPATH) "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. § 794 (b).

243.    Under the ADA, Defendants COUNTY OF SUTTER and COUNTY OF NEVADA are

THIRD AMENDED COMPLAINT
FOR DAMAGES

-59-

mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

244. Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a) (2).

245. COUNTY OF SUTTER and COUNTY OF NEVADA are mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

246. 42 U.S.C. § 12182 (b) (1) (A) (iii) provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals." (Emphasis added).

247. COUNTY OF SUTTER and COUNTY OF NEVADA violated the ADA, RA, and discriminated against MILLER and Plaintiffs of their ADA and RA: (a) failing to provide services or accommodate MILLER, with access to the programs and services designated mental health hospitals and facilities for persons who qualify for access and services under Welfare and Institutions Code § 5150; (b) failing to provide services or accommodate MILLER as indicated, with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled and suffering from mental illness as required by Title 24 and Title 15 of the California Administrative Code and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities.

248. As a result of the acts and misconduct of the Defendants and each of them, complained of herein, MILLER died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above.

/ / /

THIRD AMENDED COMPLAINT
FOR DAMAGES                                          -60-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.      For compensatory, general and special damages against each Defendant, jointly and severally, in an amount to be proven at trial;

2.      For damages related to loss of familial relations as to Plaintiffs CHRISTINA HYDE and Minor Plaintiff H.S., by and through his Guardian *ad litem*, RICHARD HYDE;

3.      Funeral and burial expenses, and incidental expenses not yet fully ascertained;

4.      General damages, including damages for physical and emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering, the loss of the services, society, care and protection of the decedent, as well as the loss of financial support and contributions, loss of the present value of future services and contributions, and loss of economic security;

5.      Prejudgment interest;

6.      For punitive and exemplary damages against each individually named Defendant in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

7.      For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law;

8.      For restitution as the court deems just and proper;

9.      For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury in this action.

Dated: June 17, 2022

Respectfully Submitted,
HADSELL STORMER RENICK & DAI LLP
SIEGEL, YEE, BRUNNER & MEHTA

By:    _/s/ Hanna Chandoo_
Dan Stormer
Hanna Chandoo
Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT
FOR DAMAGES

-61-